UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITED WESTERN BANK, et al.,                        )
                                                    )
      Plaintiffs,                           )          CIVIL ACTION
                                                    )
      v.                                    )
                                                    )          Case No. 11-408 (ABJ)
OFFICE OF THRIFT SUPERVISION, et al.,               )
                                                    )
      Defendants.                           )
_____)

**<u>REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION BY FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY AND AS RECEIVER, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

ARGUMENT ......................................................................................................................... 2

    I.    PLAINTIFFS IGNORE THE PLAIN TEXT OF THE CHALLENGE STATUTE ......................................................................................................2

    II.    THE APPOINTMENT ORDER REFERENCED IN THE COMPLAINT REFLECTS THAT FDIC-C PLAYED NO PART IN THE DECISION TO APPOINT A RECEIVER ............................................................................9

    III.    NO JURISDICTIONAL DISCOVERY IS NECESSARY ...............................12

CONCLUSION ..................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Alliance Fed. Sav. & Loan Ass'n v. FHLBB*, 782 F.2d 490 (5th Cir. 1986)...................................5

*Ashcroft v. Iqbal,* 556 U.S. ---, 129 S.Ct. 1937 (2009) ...........................................................1, 10

*Baird v. Snowbarger*, 744 F. Supp. 2d 279 (D.D.C. 2010)....................................................14

*Bastin v. Federal Nat'l Mortgage Ass'n*, 104 F.3d 1392 (D.C. Cir. 1997) ..............................14

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...............................................................1, 10

*Bopp v. Wells Fargo Bank, N.A.,* 740 F. Supp. 2d 12 (D.D.C. 2010).........................................9

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080 (D.C.Cir. 1998)..........13

*Century Fed. Sav. Bank v. Ryan,* 745 F. Supp. 1363 (N.D. Ill. 1990)..........................................5

*Chandamuri v. Georgetown Univ.,* 274 F. Supp. 2d 71 (D.D.C. 2003) .......................................9

*Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592 (D.C. Cir. 2009)................12

*Collie v. FHLBB*, 642 F. Supp. 1147 (N.D. Ill. 1986) ...............................................................5

*Committee on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909
   (D.C. Cir. 2008)..................................................................................................................4

*Community Fed. Sav. & Loan Ass'n v. FHLBB,* 96 F.R.D. 619 (D.D.C. 1983)............................5

*First Am. Fed. Bank v. Ryan,* 791 F. Supp. 253 (D. Ariz. 1992)................................................5

*First Nat'l Bank & Trust v. Department of the Treasury,* 63 F.3d 894 (9th Cir. 1995) ...............5

*First Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n*, 531 F. Supp. 251
   (D. Haw. 1981) ...........................................................................................................4, 5, 6

*Franklin Sav. Ass'n v. OTS,* 740 F. Supp. 1535 (D. Kan. 1990) .........................................5, 6

*Gibraltar Savings v. Ryan,* 1990 WL 484155 (D.D.C. July 10, 1990)........................................5

*Healy v. Ratta,* 292 U.S. 263 (1934)..........................................................................................3

*Kaempe v. Myers,* 367 F.3d 958 (D.C. Cir. 2004) ......................................................................9

*Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375 (1994)........................................................4

*Life Bancshares, Inc. v. Fiechter,* 847 F. Supp. 434 (M.D. La. 1993) .......................................5

*Lincoln Sav. & Loan Ass'n v. Wall,* 743 F. Supp. 901 (D.D.C. 1990) ........................................5

*Macharia v. United States*, 334 F.3d 61, 68 (D.C. Cir. 2003) ..................................................13

*Marietta Franklin Secs. Co. v. Muldoon,* 770 F. Supp. 1212 (S.D. Ohio 1991) ...........................5

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) .....................................................8

*Mwani v. bin Laden,* 417 F.3d 1 (D.C. Cir. 2005).....................................................................12

*Oconus DOD Employee Rotation Action Group v. Rumsfeld*, 38 Fed. Appx. 2
   (D.C. Cir. 2002) ................................................................................................................13

*Park'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189 (1985) ...........................................3

*San Marino Sav. & Loan Ass'n v. FHLBB,* 605 F. Supp. 502 (C.D. Cal. 1984) ...........................5

*Seagate Tech. LLC v. Dalian China Express Int'l Corp.,* 169 F. Supp. 2d 1146
   (N.D. Cal. 2001)................................................................................................................10

*Shemonsky v. OTS,* 733 F. Supp. 892 (M.D. Pa. 1990) ..............................................................5

*Union of Concerned Scientists v. NRC,* 711 F.2d 370 (D.C. Cir. 1983).......................................8

*United States v. Brown,* 483 F.2d 1314 (D.C. Cir. 1973) ...........................................................8

*United States v. Hill,* 694 F.2d 258 (D.C. Cir. 1982).................................................................3

*Valley Fed. Sav. & Loan Ass'n v. FHLBB,* 1989 WL 103752 (D. Kan. Aug. 25, 1989) ...............5

*Woods v. FHLBB,* 826 F.2d 1400 (5th Cir. 1987) .......................................................................5

## STATUTES

12 U.S.C. § 1464(d)(2)(B) ............................................................................. 2, 8, 9

12 U.S.C. § 1464(d)(2)(D) .................................................................................. 5, 8

12 U.S.C. § 1821(j) ................................................................................................ 5

12 U.S.C. § 1831f ................................................................................................ 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
UNITED WESTERN BANK, et al.,                   )
                                                          )
     Plaintiffs,                               )          CIVIL ACTION
                                                          )
     v.                                             )
                                                          )          Case No. 11-408 (ABJ)
OFFICE OF THRIFT SUPERVISION, et al.,        )
in its corporate capacity,                          )
                                                          )
     Defendants.                              )
_____)


## REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION BY FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY AND AS RECEIVER, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM

Plaintiffs' opposition to FDIC-C's and FDIC-R's joint motion to dismiss the case

("Opp.") badly misconceives both the Rule 12(b)(1) and the Rule 12(b)(6) analysis.  As to Rule

12(b)(1), Plaintiffs appear to believe that this Court's subject matter jurisdiction extends

wherever Congress did not specifically *exclude*; in fact, this Court can only exercise jurisdiction

based on Congress's *affirmative grant* of jurisdiction, and no such grant exists here as to the

FDIC.  And Rule 12(b)(6), as interpreted by the Supreme Court, requires Plaintiffs to state a

claim for relief that is "'plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct.

1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs'

increasingly convoluted theories about a conspiracy between OTS and the FDIC are rendered

implausible, at best, by the clear language of the Order referenced in Plaintiffs' complaint, and

this Court need not entertain farfetched allegations in a complaint that are refuted by documents

referenced therein.  Because Plaintiffs have neither carried their burden of proving subject matter

jurisdiction nor stated a plausible claim for relief, the complaint should be dismissed as to FDIC-C and FDIC-R.

**ARGUMENT**

**I.      PLAINTIFFS IGNORE THE PLAIN TEXT OF THE CHALLENGE STATUTE.**

As the FDIC showed in its opening memorandum, the statute under which Plaintiffs have

brought suit is clear in its scope.  It authorizes suit against the OTS, and only the OTS:

> In the event of such appointment, the association may, within 30 days thereafter,
> bring an action in the United States district court for the judicial district in which
> the home office of such association is located, or in the United States District
> Court for the District of Columbia, for *an order requiring the Director to remove*
> *such conservator or receiver*, and the court shall upon the merits dismiss such
> action *or direct the Director to remove such conservator or receiver.*

12 U.S.C. § 1464(d)(2)(B) (emphasis added).  Plaintiffs' attempt to wring from this clear

language authority to sue FDIC-C and FDIC-R is unavailing.

Specifically, Plaintiffs argue that because the statute "does not specify against which

agency the suit must be brought," the Court must read it as authorizing suit against FDIC-R.

Opp. at 8.  But the statute *does* state who may be sued, in that it specifies the sole relief that may

be granted: "an order requiring the Director [of OTS] to remove such conservator or receiver."

In Plaintiffs' view, it appears, defendants other than OTS may be sued, but may not be ordered to

provide any relief.  Plaintiffs do not attempt to explain the logic of such a scheme, and indeed

Plaintiffs promptly contradict themselves, arguing that FDIC-R is a proper defendant because it

can grant additional relief: "only the FDIC can undo the consequences of" the receivership

appointment.  Opp. at 11.  Congress, however, has not given the Court power to order FDIC-R to

"undo the consequences" of the appointment, whether or not Plaintiffs believe it should have.

Furthermore, Plaintiffs' strained reading of the statute violates longstanding rules

governing statutory interpretation.  One such cardinal principle is that construction "must begin

2

with the language employed by Congress and the assumption that the ordinary meaning of that

language accurately expresses the legislative purpose." *Park 'N' Fly, Inc. v. Dollar Park and*

*Fly, Inc.*, 469 U.S. 189, 194 (1985).  Jurisdictional statutes, in particular, are narrowly construed;

federal courts must "scrupulously confine their own jurisdiction to the precise limits which [a

federal] statute has defined," *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212 (1971) (citations

omitted), and must presume that Congress intended only the jurisdiction that it expressly

conferred:

> It is a principle of first importance that the federal courts are courts of limited
> jurisdiction. . . .They are empowered to hear only those cases that (1) are within
> the judicial power . . . and (2) that have been entrusted to them by a jurisdictional
> grant by the Congress. . . .
>
> The presumption is that a federal court lacks jurisdiction in a particular case until
> it has been demonstrated that jurisdiction over the subject matter exists.

*United States v. Hill*, 694 F.2d 258, 260-61 (D.C. Cir. 1982) (citations omitted); *see also id.* at

261 ("The fact that Congress has legislated in a specific area, without more, does not empower a

federal court to adjudicate matters arising from or requiring an interpretation of that legislation.

Rather, a specific grant of subject matter jurisdiction must exist before a federal tribunal may so

act.")

Plaintiffs' reading of the statute would jettison these rules.  By invoking the statute's

purported silence on the proper target of a challenge suit, Plaintiffs argue, in effect, that because

Congress has not expressly prohibited such suits against FDIC-R, the statute permits such suits.

Opp. at 8.  This approach turns the above canons of statutory construction on their heads, and

would dramatically transform the federal courts: if Plaintiffs were correct, the federal district

courts would be courts of plenary rather than limited jurisdiction, prevented from addressing

only those controversies that Congress has specifically exempted from review.  The Supreme

Court has rejected this view. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (federal district courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute").

Equally meritless is Plaintiffs' argument that this Court could not provide meaningful relief without FDIC-R present. Opp. at 8-11. In fact, the relief available to Plaintiffs will be identical whether or not FDIC-R is a defendant, because the statute simply authorizes the Court to direct OTS to remove FDIC-R as a receiver. There is no basis to suggest that FDIC would not respect a final order entered by the Court in this case, whether the order is directed to OTS alone or to both FDIC-R and OTS. Plaintiffs' apparent and unsupported fear that FDIC-R will go on acting as a rogue receiver absent a direct order from the Court is insufficient grounds for retaining FDIC-R as a defendant.[1]

Furthermore, the statute prohibits the Court from restraining the FDIC's exercise of its powers as receiver other than through an order (directed to the OTS) to remove the receiver. Section 1464(d)(2)(D) provides that "[e]xcept as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exercise of powers or functions of a conservator or receiver." The court in *First Savings & Loan Association v. First Federal Savings & Loan Association*, 531 F. Supp. 251 (D. Haw. 1981), cited this provision (since amended to substitute OTS for the Federal Home Loan Bank Board ("FHLBB") and the FDIC for the Federal Savings and Loan Insurance Corporation ("FSLIC")) in rejecting the plaintiff's request for an "order

---

[1] Plaintiffs suggest that FDIC-R must be present because "this Court must have a way to unwind the actions taken by the FDIC-R and the FDIC-C in transferring the Bank's assets." Opp. at 8. Again, even assuming that the Court "must have" the power Plaintiffs wish to confer and that FDIC-R can "unwind" a transfer of assets (FDIC-C plays no part in such a transfer), the presumption that executive branch officers comply with the law, *see Committee on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008), makes any concerns about implementing a potential court order unwarranted.

restoring its assets" as beyond the Court's powers:

> By doing so, the plaintiff is asking this court to undo the transactions whereby First Savings was placed in receivership and its assets sold to First Federal. This court is precluded by 12 U.S.C. § 1464 from issuing such an order. That section provides that "except at the instance of the [FHLBB]" a court may not "restrain or affect the exercise of powers or functions of a conservator or receiver." 12 U.S.C. § 1464(d)(6)(C) (1976).

> Restoring the assets of First Savings in the manner requested by the plaintiff would interfere with the powers and the functions of the FSLIC. Issuing such an order would amount to reversing the decision made by the FSLIC to sell the assets of First Savings to First Federal. This would directly interfere with the power of the FSLIC to dispose of the assets of an association in receivership. Because the Board is not a party to this action, this court cannot issue an order that would so affect the powers of a receiver.

531 F. Supp. at 253-54.  Section 1821(j) likewise prohibits the Court from restraining the FDIC's authority as receiver.  12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver.").

Moreover, if relief were meaningless absent the receiver, presumably at least one court would have so held, and yet Plaintiffs do not cite a single case holding that the receiver must be a defendant in a challenge case for relief to be effective.  On the contrary, it is routine for banks challenging the appointment of a receiver to name only the appointing agency as a defendant.[2]

Nor do Plaintiffs meaningfully grapple with the case law holding that the receiver is not the proper defendant.  In *Franklin*, for example, the district court dismissed a state official that

---

[2] *See, e.g.*, *First Nat'l Bank & Trust v. Department of the Treasury*, 63 F.3d 894 (9th Cir. 1995); *Franklin Sav. Ass'n v. OTS*, 934 F.2d 1127 (10th Cir. 1990); *Woods v. FHLBB*, 826 F.2d 1400 (5th Cir. 1987); *Alliance Fed. Sav. & Loan Ass'n v. FHLBB*, 782 F.2d 490 (5th Cir. 1986); *Life Bancshares, Inc. v. Fiechter*, 847 F. Supp. 434 (M.D. La. 1993); *First Am. Fed. Bank v. Ryan*, 791 F. Supp. 253 (D. Ariz. 1992); *Marietta Franklin Secs. Co. v. Muldoon*, 770 F. Supp. 1212 (S.D. Ohio 1991); *Century Fed. Sav. Bank v. Ryan*, 745 F. Supp. 1363 (N.D. Ill. 1990); *Lincoln Sav. & Loan Ass'n v. Wall*, 743 F. Supp. 901 (D.D.C. 1990); *Gibraltar Savings v. Ryan*, 1990 WL 484155 (D.D.C. July 10, 1990); *Shemonsky v. OTS*, 733 F. Supp. 892 (M.D. Pa. 1990); *Valley Fed. Sav. & Loan Ass'n v. FHLBB*, 1989 WL 103752 (D. Kan. Aug. 25, 1989); *Collie v. FHLBB*, 642 F. Supp. 1147 (N.D. Ill. 1986); *San Marino Sav. & Loan Ass'n v. FHLBB*, 605 F. Supp. 502 (C.D. Cal. 1984); *Community Fed. Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619 (D.D.C. 1983).

had participated in the conservatorship determination, finding that the official had "no power or authority to grant the relief plaintiffs seek."  740 F. Supp. 1531, 1535 (D. Kan. 1990).  Plaintiffs argue that *Franklin* is distinguishable because the official could not "reclaim" the institution's assets, Opp. at 11—but even assuming that the receiver has that power, the receiver was *not named as a defendant* in *Franklin*.  Only OTS, following the dismissal of the state official, was named as a defendant, and yet none of the various court decisions in that case suggested that OTS could not offer the plaintiff meaningful relief.[3]  Equally unpersuasive is Plaintiffs' attempt to distinguish *First Savings*, where the court dismissed FSLIC, the receiver, and noted that its sole power was an order directed to FHLBB, the appointing agency, to remove FSLIC.  531 F. Supp. at 253.  Plaintiffs suggest that the plaintiff there could have named both FSLIC and FHLBB as defendants, but the court plainly held that it had no power to remove FSLIC as receiver directly or to otherwise restrain FSLIC's exercise of powers as receiver.  *Id.* at 253-54.  The *First Savings* court recognized, in other words, that no meaningful relief could be had from FSLIC.  This Court should follow suit and dismiss the FDIC.

Equally misplaced is Plaintiffs' reliance on a nearly-thirty-year-old case, *Fidelity Savings & Loan Association v. FHLBB*, 540 F. Supp. 1374 (N.D. Cal.), *rev'd on other grounds*, 689 F.2d 803 (9th Cir. 1982), for the proposition that a court may order a receiver to reacquire assets and restore them to the association.  Opp. at 8-9.  That suggestion was *dicta* in that case, as the association did not seek any such reacquisition.  *Id.* at 1387 ("[T]he plaintiff has indicated to the court through the argument of its counsel that it would not choose to have its association returned to it" absent certain conditions that the court could not impose).  Furthermore, it appears that the transferee in *Fidelity* was created as a temporary institution by regulators pursuant to their

---

[3] Plaintiffs make no attempt to distinguish the holding of *Franklin* as to FDIC-C, which, like the official in *Franklin*, is alleged to have played a role in the receivership determination.

powers under Section 406(b)(4) of the National Housing Act, and was subject to regulators' control.  *See* 12 U.S.C. § 1729(b)(4) (1980) (FSLIC may, upon appointment as conservator or receiver for a savings and loan association, "organize a new Federal savings and loan association to take over its assets,"); *compare* 12 U.S.C. § 1821(m) (upon default of an insured bank, FDIC may "organize a new national bank . . . to assume the insured deposits of such bank in default and otherwise to perform temporarily the functions hereinafter provided for"); *id.* § 1821(m)(4) (new bank to be "managed by an executive officer appointed by the Board of Directors of the Corporation who shall be subject to its directions).  Here, however, the institution that acquired United Western's assets, First Citizens Bank & Trust, was not created by the FDIC, and repurchasing the assets sold to First Citizens would be considerably more complicated and difficult.  Finally, even if the discussion in *Fidelity* were controlling, the subsequent enactment of § 1821(j) casts considerable doubt on whether the Court can order the receiver to repurchase a failed institution's assets from an acquiring institution.  12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver.").[4]

The Court should reject Plaintiffs' suggestion that they should be permitted to sue the FDIC under the Administrative Procedure Act if Section 1464(d)(2)(B) does not so permit.  Opp. at 10 n.4.  As discussed above, Section 1464(d)(2)(D) prohibits courts from "tak[ing] any action

---

[4] Plaintiffs also cite *Washington Federal Savings & Loan Association v. FHLBB*, 526 F. Supp. 343 (N.D. Ohio 1981), for the proposition that a court may order a receiver to reacquire and restore transferred assets, but the court there stopped well short of any such holding.  Opp. at 9.  The plaintiff in that case argued that the receiver exceeded its statutory powers by entering into a purchase and assumption agreement with another institution under which the plaintiff's assets were transferred.  *Id.* at 393-94.  The court rejected that contention, however, finding that the agreement and transfer were well within the receiver's powers, and nothing in the court's discussion indicated a belief that the receiver had the ability to reacquire the assets from the acquiring institution.  *Id.* at 394-400.  The court's entire analysis of the receiver's powers was *dicta*, moreover, as the court had already found that the receiver was properly appointed, *id.* at 389, and hence, even if the court had suggested (which it did not) that the receiver could have clawed back the transferred assets, any such suggestion would have been *dicta* twice over.

for or toward the removal of any conservator or receiver or . . . to restrain or affect the exercise

of powers or functions of a conservator or receiver" except as provided in Section 1464(d)(2).  If

Plaintiffs cannot proceed against the FDIC under Section 1464(d)(2)(B)—and they cannot—they

cannot proceed against the FDIC at all.  The APA states that its provision for judicial review

should not be read as overriding specific exclusions from review in other statutes.  *See* 5 U.S.C.

§ 701(a) ("This chapter applies, according to the provisions thereof, except to the extent that . . .

statutes preclude judicial review."); *id.* § 702 ("Nothing herein . . . confers authority to grant

relief if any other statute that grants consent to suit expressly or impliedly forbids the relief

which is sought.")  That restriction is consistent with the principle that the specific trumps the

general in statutory interpretation, *see, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374,

384-85 (1992); *Union of Concerned Scientists v. NRC*, 711 F.2d 370, 380-81 (D.C. Cir. 1983)

(APA's general provisions may not be used to "circumvent[]" the agency's more specific

statute); *United States v. Brown*, 483 F.2d 1314, 1321 (D.C. Cir. 1973) (specific statute controls

over more general provision).  Reading the general APA provision for judicial review as

overriding the limitations of Section 1464(d)(2)(B) would therefore ignore the text of the APA

and violate yet another canon of statutory construction.

Finally, FDIC-C is not a proper defendant under Section 1464(d)(2)(B).  Plaintiffs assert

that "the brokered deposit determination was the primary driver for the seizure of the Bank"

because "[t]he OTS'[s] alleged concern with deposit concentration and a potential liquidity crisis

stem directly from the FDIC's brokered deposit determination."  Even if that were true (and,

once again, it is not, as discussed below), nothing about Section 1464(d)(2)(B) authorizes suit

against a non-OTS agency whose ruling is the "primary driver" for OTS's appointment decision;

that provision plainly anticipates a suit against OTS alone.  Plaintiffs' unsupported conspiracy

theories cannot trump the statute's language.

The plain text of Section 1464(d)(2)(B) does not authorize suit against FDIC-C or FDIC-R in a challenge to the appointment of a receiver, and Plaintiffs' invitation to this Court to ignore that plain language should be politely declined.  FDIC-C and FDIC-R should be dismissed.

## II.    THE APPOINTMENT ORDER REFERENCED IN THE COMPLAINT REFLECTS THAT FDIC-C PLAYED NO PART IN THE DECISION TO APPOINT A RECEIVER.

Plaintiffs' assertion that FDIC-C played a direct role in the decision to appoint a receiver is fatally undermined by the Order appointing the FDIC as receiver, which clearly reflects that OTS alone made the appointment decision.  *See* Memorandum in Support of Joint FDIC-C and FDIC-R Motion to Dismiss, Ex. A.  Not only does the Order repeatedly state that the OTS Acting Director determined that grounds for appointment existed, and acted on that determination by appointing the FDIC, it reflects no reliance on any determination made by FDIC-C as to brokered deposits.

Plaintiffs attempt to avoid the clear import of the Order by wishing it away.  Plaintiffs argue that "the brokered deposit determination was the primary driver for the seizure of the Bank," citing allegations in the complaint, but a court need not, in reviewing a motion to dismiss under Rule 12(b)(6), accept as true those allegations that are contradicted by referenced documents.  *Kaempe v. Myers,* 367 F.3d 958, 963 (D.C. Cir. 2004); *Bopp v. Wells Fargo Bank, N.A.*, 740 F. Supp. 2d 12, 14 (D.D.C. 2010); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 78 (D.D.C. 2003).  And Plaintiffs' assertion that a reference in the Order to "cooperation" between OTS and the FDIC should be read as a sign of nefarious dealings between the agencies cannot survive a review of the many other OTS orders showing that "in cooperation with the FDIC" is boilerplate language that routinely appears when the FDIC is appointed as receiver.

Memorandum in Support of Joint Motion to Dismiss at 18 n.7.  Plaintiffs lamely suggest that the

language may not have "the same meaning in every order," Opp. at 13, but specifically drafted

provisions prevail over boilerplate clauses, *see, e.g.*, *Seagate Tech. LLC v. Dalian China Express

Int'l Corp.*, 169 F. Supp. 2d 1146, 1157 (N.D. Cal. 2001), and the body of the Order, setting

forth OTS's decisionmaking and making clear that the decision was made independently of

FDIC-C, makes Plaintiffs' reading of the standard "cooperation" language farfetched at best.[5]

Even if the complaint's allegations were not directly contradicted by the documents

referenced in the complaint, moreover, dismissal would still be appropriate because Plaintiffs

have not stated a plausible claim.  The Supreme Court has held in two recent decisions that

courts considering Rule 12(b)(6) motions must determine not simply whether the plaintiffs could

conceivably prevail, but whether the allegations of the complaint "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  A complaint can only be "plausible on its face" if it pleads "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged; a "sheer possibility that a defendant has acted unlawfully" is not sufficient.

*Iqbal*, 129 S.Ct. at 1949.  In *Twombly*, the plaintiff pleaded an antitrust conspiracy claim, but the

only factual allegations set forth in the complaint involved "parallel conduct" among the

---

[5] As for Plaintiffs' suggestion that the FDIC was "intimately involved with the regulation of the Bank for one year prior to the unlawful seizure," Opp. at 3, to the extent Plaintiffs insinuate that the FDIC's role in the regulation of United Western was in any way unusual, they are wrong.  Pursuant to its role as the nation's deposit insurer, the FDIC is required to monitor insured institutions' deposit activities and take steps to ensure that such institutions are complying with all applicable laws.  12 U.S.C. § 1817(a).  Among those laws is 12 U.S.C. § 1831f, which defines "deposit brokers" and prohibits institutions that are not "well capitalized" from holding brokered deposits (though adequately capitalized institutions may hold such deposits if the FDIC grants a waiver).  The FDIC found in June 2010 that United Western was holding brokered deposits, Compl. ¶ 52, and as United Western was merely "adequately capitalized" at that time (and later became undercapitalized), *id.* ¶ 54, the FDIC carried out its statutory responsibilities in informing United Western of that determination.  OTS remained the primary federal regulator of United Western, however, and the FDIC took on no special regulatory responsibilities by virtue of the brokered deposit determination; in particular, that determination did not confer on the FDIC any role in the decision to appoint a receiver.

defendants, and the Court found that insufficient to state an antitrust claim.  550 U.S. at 567-68. In *Iqbal*, the plaintiffs cited the post-September 11, 2011, detention of suspects that were disproportionately Arab and alleged discrimination, but the Court held that the government's investigation of suspects with ties to the terrorist attacks made the requested inference implausible.  129 S.Ct. at 1951-52.

In this case, for FDIC-C to be a proper defendant, the Court would have to find all of the following:

- FDIC-C, not OTS, elected to place United Western in receivership based on FDIC-C's brokered deposit determination;

- OTS then decided to cover up that decision by falsely representing, in the Order, that it made the appointment; and

- OTS falsely claimed that the grounds for the appointment were other factors independent of the brokered deposit determination (factors that OTS had been discussing with United Western for months).

Plaintiffs further conjecture that United Western was placed in receivership on January 21, 2011, so that the FDIC could "avoid addressing the Bank's January 4, 2011 challenge" to the brokered deposit determination, Opp. at 12, and hence that the three separate grounds for appointment of a receiver set forth in the Order were merely pretextual.  The FDIC respectfully submits that Plaintiffs' theory of the case is too farfetched to state a claim that is "plausible on its face" under *Iqbal* and *Twombly*, the facts alleged in the complaint (the FDIC made a determination as to United Western's brokered deposits, and OTS subsequently placed the bank in receivership on other grounds) do not give rise to a plausible inference that FDIC played a role in the appointment decision.

FDIC-C's determination that United Western held brokered deposits played no role in OTS's decision to appoint FDIC-R as receiver for United Western, and Plaintiffs offer no plausible theory under which relief could be granted against FDIC-C.  FDIC-C should therefore be dismissed.

## III.    NO JURISDICTIONAL DISCOVERY IS NECESSARY.

Finally, this Court should reject Plaintiffs' request for jurisdictional discovery. Jurisdictional discovery is not invariably available: only upon a showing of additional facts that could affect the jurisdictional analysis will a court permit a plaintiff to take discovery on jurisdiction issues.  *Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009); *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005).

Here, no jurisdictional discovery could make the FDIC a proper defendant because there are no additional jurisdictional facts to discover.  The Court lacks jurisdiction over the FDIC because Section 1464(d)(2)(B) does not authorize suit against the FDIC in an action to remove a receiver.  Moreover, neither FDIC-C nor FDIC-R can provide Plaintiffs the relief permitted by the statute, as neither party can remove FDIC-R as receiver for United Western.  Discovery will not change those facts.  Plaintiffs claim that they need "jurisdictional discovery as to the FDIC's role in the unlawful seizure," Opp. at 13, but that is not "jurisdictional discovery"—it is discovery on the merits that goes beyond the administrative record.  The only "jurisdictional" issue here is what Section 1464(d)(2)(B) authorizes, and that is a purely legal issue.

Put another way: FDIC-C and FDIC-R have moved jointly to dismiss the complaint as against the FDIC under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The grounds for the Rule 12(b)(1) motion lie in the statutory text, which conspicuously permits suit against

OTS, and only OTS; the grounds for the Rule 12(b)(6) motion reside in the complaint and the

Order referenced therein.  Plaintiffs seek discovery on the discussions and decisionmaking that

led to the issuance of the Order, but the requested discovery is a merits issue that pertains solely

to the Rule 12(b)(6) portion of the FDIC's motion and not to the Rule 12(b)(1) portion.  Hence,

the discovery Plaintiffs seek is not "jurisdictional" and is inappropriate here.  *See Macharia v.*

*United States*, 334 F.3d 61, 68 (D.C. Cir. 2003) ("[D]iscovery on the merits would have been

entirely irrelevant to the jurisdictional issue raised by the government's motion to dismiss.");

*Oconus DOD Employee Rotation Action Group v. Rumsfeld*, 38 Fed. Appx. 2, 3 (D.C. Cir. 2002)

("Nor did the district court abuse its discretion in denying 'jurisdictional' discovery when the

information sought by appellants was unrelated to the issue of jurisdiction.").[6]

Furthermore, no discovery is needed because Plaintiffs have not stated a plausible claim

on which relief can be granted.  The complaint and the Order incorporated therein by reference,

even drawing all reasonable inferences in Plaintiffs' favor, do not set forth a plausible claim for

relief; as discussed above, the Order plainly reflects that OTS made the appointment decision

independently of the FDIC, and made the decision on grounds separate from the brokered

deposit determination.  The Complaint may therefore be dismissed under Rule 12(b)(6), and any

jurisdictional discovery would thus be futile.

Plaintiffs also suggest, *see* Opp. at 13, that the FDIC's motion improperly injects factual

issues and thus should be considered a summary judgment motion on which discovery is

warranted, but the FDIC has done no such thing.  It has simply pointed out that the Order

referenced in the complaint makes clear that the FDIC played no role in the appointment

---

[6] Even if the discovery Plaintiffs seek could be characterized as jurisdictional, it would still be inappropriate. Plaintiffs cannot obtain jurisdictional discovery by offering unsupported conjecture that the FDIC influenced OTS's appointment decision, then asking for discovery on that theory. *Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) ("[I]n order to get jurisdictional discovery a plaintiff must have a good faith belief" that discovery will establish jurisdiction).

decision.[7]  Plaintiffs cannot obtain discovery based simply on groundless conjecture about the

dealings between OTS and the FDIC.  The D.C. Circuit's decision in *Bastin v. Federal Nat'l*

*Mortgage Ass'n*, 104 F.3d 1392 (D.C. Cir. 1997), controls here: the plaintiff in that case

theorized that the Federal Reserve Board shares information about Treasury bill rates with its

member banks (and that the defendant bank therefore had access to certain rate information), but

the district court declined to permit discovery, and the D.C. Circuit upheld that ruling:

> [T]he Bastins were unable to offer anything but rank speculation to support their
> contention that the Federal Reserve Board is somehow involved in the release of
> rate information via the hotlines of the Federal Reserve Banks. The district court
> does not abuse its discretion when it denies a discovery request that would
> amount to nothing more than a fishing expedition.

*Id.* at 1396.  Here, likewise, Plaintiffs' "rank speculation" that the FDIC influenced OTS's

decision to appoint a receiver does not justify a discovery "fishing expedition."

## CONCLUSION

    For the foregoing reasons, the Complaint should be dismissed as to FDIC-C and FDIC-R

with prejudice.

                    Respectfully submitted,

                    COLLEEN J. BOLES
                    Assistant General Counsel
                    BARBARA SARSHIK
                    Senior Counsel


                    _____/s/_____
                    DUNCAN N. STEVENS D.C. Bar No. 473550
                    Counsel
                    Federal Deposit Insurance Corporation
                    3501 N. Fairfax Drive, D-7028
                    Arlington, VA 22226
                    dstevens@fdic.gov
                    (703) 562-2402 (phone)
                    (703) 562-2477 (fax)

---

[7] It is proper to consider documents referenced in a complaint in a Rule 12(b)(6) motion.  *Baird v. Snowbarger*, 744
F. Supp. 2d 279, 287 n.2 (D.D.C. 2010).

dstevens@fdic.gov

Attorney for Federal Deposit Insurance Corporation
in its corporate capacity

KATHRYN R. NORCROSS
Senior Counsel

_____/s/_____
MERRITT A. PARDINI
Counsel
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive, D-7066
Arlington, VA 22226
(703) 562-6079 (phone)
(703) 562-2477 (fax)
mpardini@fdic.gov

Attorney for Federal Deposit Insurance Corporation
in its receivership capacity

May 9, 2011