UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
UNITED WESTERN BANK, *et al.*,        )
                                      )
            Plaintiffs,          )
                                      )
   v.                                 )   Civil Action No. 11-0408 (ABJ)
                                      )
OFFICE OF THRIFT SUPERVISION,         )
*et al.*,                             )
                                      )
            Defendants.          )
_____)

## MEMORANDUM OPINION

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1461, *et. seq.,* accords the Director of the Office of Thrift Supervision ("OTS") broad powers to regulate federally insured savings associations, including the power to appoint a receiver or conservator for an association under certain circumstances. 12 U.S.C. § 1464(d)(2)(A). The appointment of a receiver strips the stockholders, members, officers, and directors of the bank of any authority to act in connection with the bank – with one exception, *see* 12 U.S.C. § 1821(d)(2)(A)(i) and 12 C.F.R. § 558(b)(5). In the event of the appointment of a conservator or receiver, "the association may, within 30 days thereafter, bring an action . . . in the United States District Court for the District of Columbia[] for an order requiring the Director to remove such conservator or receiver . . . ." 12 U.S.C. § 1464(d)(2)(B).

In this case, plaintiff United Western Bank ("the bank" or "the association") challenges the January 21, 2011 decision by John E. Bowman, the Acting Director of OTS, to appoint the Federal Deposit Insurance Corporation ("FDIC") as receiver for the bank. Notwithstanding the language of the FIRREA judicial review provision, defendants OTS and Bowman have moved

under Fed. R. Civ. Proc. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction, contending that there has been no waiver of sovereign immunity to allow plaintiffs to bring this action. The FDIC has also moved to dismiss the claims brought against it in its corporate capacity and in its capacity as receiver for the bank. Since the statute specifically contemplates that a bank may challenge the Director of OTS's decision to appoint a receiver in the District Court, the Court will permit the claims filed on behalf of plaintiff United Western Bank to proceed. But claims brought in the name of other would-be plaintiffs will be dismissed, and claims filed against defendants other than OTS and its Director will also be dismissed.

## BACKGROUND

United Western Bank was a federally chartered savings association with eight full-service branches in Colorado. Compl. ¶ 30. Plaintiff United Western Bank, Inc. ("the holding corporation") was the sole shareholder of United Western Bank. *Id.* ¶ 19. In light of challenges stemming from the global financial crisis, in November 2010, the bank submitted a plan for a private sector recapitalization to OTS. *Id.* ¶ 34. The bank alleges that OTS was dissatisfied with the recapitalization plan and particularly, its processing and settlement business model. *Id.* ¶ 36. On January 21, 2011, defendant Bowman appointed FDIC as a receiver for United Western Bank pursuant to 12 U.S.C. § 1464(d)(2)(A).

The Director identified three separate statutory grounds for appointing a receiver: (1) the association was in an unsafe and unsound condition to transact business, *see* 12 U.S.C. § 1821(c)(5)(C); (2) the association was likely to be unable to pay its obligations or meet its depositors' demands in the normal course of business, *see* 12 U.S.C. § 1821(c)(5)(F); and (3) the association was undercapitalized, as defined by 12 U.S.C. § 1831o(b), and had failed to submit a capital restoration plan acceptable to OTS within the appropriate amount of time, *see* 12 U.S.C. §

1821(c)(5)(K)(iii).  *See* OTS Receivership Order for United Western Bank, Ex. 1 to Def. OTS's Mot. to Dismiss ("OTS Mem.").

On February 17, 2011, the individuals who had previously constituted the board of directors for the association and the holding corporation's board held a joint meeting to discuss the receivership. The meeting was attended by a quorum of each entity's directors, as well as a number of executives from the bank and the holding corporation, and the bank's general counsel and executive vice president, Theodore J. Abariotes. Abariotes Decl. Six of the bank's seven directors were present at the meeting. Decls. of Berling, Bullock, Darre, Gibson, Hirsh, and Peoples. At this meeting, after reviewing a draft complaint, the participants unanimously agreed to file suit seeking judicial review of OTS's determination to appoint a receiver. *Id.* On February 18, 2011, the association, the holding corporation, and five individual directors (collectively "plaintiffs") brought this action under 12 U.S.C. § 1464(d)(2)(B) against OTS, OTS's acting director, the FDIC as receiver for the bank ("FDIC-R"), and the FDIC in its corporate capacity ("FDIC-C").

## I. STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted)). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

### A. 12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court with limited jurisdiction, we begin, and end, with examination of our jurisdiction."). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement, . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986) *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1993); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). In this case, both parties have submitted materials for the Court's consideration on this issue.

### B. 12(b)(6) Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. Pro. 8(a)(2)). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 1949 (quoting *Twombly*, 550 U.S. at 570), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

### C. Sovereign Immunity

Under the doctrine of sovereign immunity, the United States is immune to suit unless the United States explicitly consents to being sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). This immunity extends to the agencies of the federal government, including OTS. *FDIC v. Meyer*, 510 U.S. 471, 474 (1994) ("Absent a waiver, sovereign immunity shields the Federal

5

Government and its agencies from suit."). *See also Transohio Sav. Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 607 (D.C. Cir. 1992). A waiver of immunity is strictly construed in favor of the sovereign. *Orff v. United States*, 545 U.S. 596, 601–02 (2005).

"[A] plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)). Moreover, when the defense of sovereign immunity is raised in a suit against a government agent in his or her individual capacity, that plaintiff must overcome the defense in order to survive a Rule 12(b)(6) motion to dismiss. *Id.* Therefore, plaintiffs bear the burden of establishing that sovereign immunity has been abrogated in order to overcome defendants' motions to dismiss.

## II. ANALYSIS

### A. The Claims Brought on Behalf of United Western Bank

OTS acknowledges that FIRREA contains a judicial review provision that permits an association to seek the removal of a receiver in federal court. But it argues that since "the complaint does not allege that the board of directors of the association authorized the filing of the instant suit," *see* OTS Mem. at 3, and the board did not take all of the ordinary corporate steps – such as issuing notices of a board meeting, keeping minutes of the meeting, and executing a board resolution, *see id*. at 10 and Tr. at 9, 31, and 36 – this Court does not have jurisdiction under 12 U.S.C. §1464(d)(2)(B).

In the Court's view, the directors' failure to dot their "i's" and cross their "t's" should not divest this Court of jurisdiction over the precise type of claim that Congress authorized it to hear. Since OTS can point to no authority that would require proof of formal board action as a

6

predicate to the exercise of subject matter jurisdiction under section 1464, and since the one case that OTS identified as controlling in this instance does not support its position, the Court will deny the government's motion to dismiss the claims brought by, or on behalf of, United Western Bank. While the statute fully authorizes OTS to decapitate the bank, it also grants the severed head one final request – to ask to be reattached. It is no defense to complain that the head did not put it in writing.

The Court is unaware of any requirement in any other context that a civil action brought on behalf of an organizational plaintiff must specifically allege in the complaint that the lawsuit was properly authorized. Nor has OTS pointed the Court to any authority for the proposition that a court must ever look beyond the complaint and undertake such an inquiry before assuming jurisdiction over a matter. OTS contends that the instant situation is unique because the association itself is the only party permitted to sue. *See* OTS Mem. at 7–9. But the statute does not contain any specific requirements for how the action – which by its nature is being brought under extraordinary circumstances – must be initiated from within the organization.[1] The critical

---

1      OTS argues that only the board of directors, in its entirety, had the power to initiate litigation on behalf of the association. This is not an accurate statement concerning corporate governance in general, *see* 2 Fletcher Cyc. Corp. § 418 ("Generally, a formal resolution need not be passed nor a formal vote taken in order to validate acts done at the meeting, unless so required by statute, the articles of incorporation, or the bylaws."). There is nothing in the United Western Bank bylaws submitted to the court by OTS that would bar the group of former executives and six out of seven former directors from taking that step, even if there was no formal notice of the meeting in advance. The Amended and Restated Bylaws of United Western Bank submitted to the Court state in Article II Section 6 that "the attendance of a director at a meeting shall constitute a waiver of notice of such meeting," and Section 8 provides that "the act of the majority of the directors present at a meeting at which a quorum is present shall be the act of Board of Directors . . . ." Exhibit 3 to Def. Bowman's Mem. to Dismiss. But even if a disgruntled shareholder or director could find grounds to complain that the lawsuit was not properly authorized, that would not divest this court of *jurisdiction* to hear the suit brought on the association's behalf in the meantime.

7

issue for purposes of jurisdiction is whether the action is being brought by or on behalf of the association itself, since no other individual or entity is a proper plaintiff.

OTS insisted in its pleadings and in open court that its motion is governed by the D.C. Circuit's opinion in *Gaubert v. Federal Home Loan Bank Board*, 863 F.2d 59 (D.C. Cir. 1988). OTS argued that "formal action by United Western Bank's board of directors was necessary in order to authorize the association to bring this suit." OTS Memo. at 9 (citing *Gaubert*, 863 F.2d at 67). *See also* OTS Reply at 1 ("The Court of Appeals for this circuit has held that this challenge must 'originate in the board of directors' of the closed savings association, an act which constitutes the directors' 'one remaining power' after a receivership appointment.") (quoting *Gaubert*, 863 F.2d at 67); Tr. at 11. The government reads too much into the sentence fragments it lifts from the *Gaubert* opinion.

In *Gaubert*, the Court of Appeals did not purport to address the question now pending before this Court. An individual shareholder brought a derivative action on behalf of a savings and loan association that had been placed into receivership by the Federal Home Loan Bank Board ("FHLBB"). The district court dismissed the action pursuant to Fed. R. Civ. P. 23.1, which governs derivative suits, on the grounds that the plaintiff had not first made a demand on the board of directors that it proceed with the lawsuit, and that the plaintiff had failed to allege with sufficient particularity why such a demand would have been futile. *Gaubert*, 863 F.2d at 61. The plaintiff took the position on appeal that no demand was needed since the board had acceded to the receivership – it had closed the bank itself under prodding by the FHLBB, and then the receiver was appointed. *Id*. Thus, the plaintiff argued, demand was futile.

The court's analysis began with the requirements of Rule 23.1, and it discussed the showing necessary to establish futility. *See id.* at 64–66. The court concluded that "we agree

with the district court that something more than board acquiescence in the actions complained of must be present before demand will be excused." *Id.* at 66.

The court then summarized Gaubert's argument that there should be an exception to the demand requirement for derivative suits in which shareholders are contesting the appointment of a receiver under 12 U.S.C. §1464(d)(6)(A). It stated:

> In essence, Gaubert argues that the unique statutory setting of §1464 – in which the only power left in the board of directors following the appointment of a receiver is the authority to challenge that appointment, *see* 12 U.S.C. §1464(d)(6)(A); *First S & L Ass'n,* 547 F. Supp. 988, 944 (D. Hawaii 1982) – somehow renders the board's views on the appointment of the receiver meaningless or irrelevant.

*Gaubert*, 863 F. 2d at 67. So, while *Gaubert* did note in the sentence excerpted by OTS that *the only thing the board can do* is to bring an action to remove the receiver, it did not "hold" that *only the board* can bring the action.

A careful reading of the rest of the opinion makes this conclusion even more clear. The court went on to consider and reject the plaintiff's suggestion that a demand should not be necessary in a receivership situation. It stated:

> Section 1464 itself contains no evidence that Congress sought to exempt shareholders from the strictures of the demand requirement. Rather, it provides that in the event of the appointment of a receiver, "the *association* may . . . bring an action . . . ." If anything, this passage suggests that Congress fully expected that challenges to the appointments of receivers would originate in the board of directors.

*Id.* at 67. This language also does not support the interpretation advanced by OTS. The D.C. Circuit did not "hold" that the challenge to the receiver "must" originate in the board of directors, *see* OTS Reply at 1, and nowhere did it hold that "formal action" by the association's board is "necessary in order to authorize the association to bring this suit." OTS Mem. at 9. In fact, in addressing Gaubert's contention, the court went on to observe:

9

> To the extent the 30-day limitation or the inherent financial difficulties of corporations in receivership render demand more difficult in the § 1464 context, the court itself can apply its discretion in determining what *effect* to give a board's refusal to pursue the action or failure to acknowledge the demand. A court may permissibly find, for example, that if a timely, good faith demand is made on the board and there is no response within the 30 day period . . . the shareholder should be permitted to pursue the action in a derivative capacity.

*Id.* at 67. The fact that the *Gaubert* court was willing to contemplate situations in which a derivative action might be brought despite the board's rejection of a shareholder's demand indicates that the court recognized that there may very well be a future suit brought under section 1464 which was not authorized by the board *at all* – either formally or informally.

Counsel for OTS complained to the Court: "What we are lacking at this point is any kind of written record. And we do, as the government, require our insured institutions to keep written records . . . ." Tr. at 34. In its papers, OTS cites to the regulations for the ordinary management of saving associations, such as those that require the maintenance of "complete books and records" or "minutes of the proceedings of its . . . board of directors, and committees of directors." OTS Reply at 6 n.7 (citing 12 C.F.R. §§ 552.6-1(a) and 552.11(a)). But the government's suggestion that those regulations would still be operative after the appointment of a receiver runs counter to the very statutory provisions and regulations that OTS cites for the proposition that the individual officers were devoid of any power to act. The government cannot on the one hand invest the receiver with "all rights, title, powers, and privileges of the insured depository institution and of any . . . officer[] or director of such institution," 12 U.S.C. § 1821(d)(2)(A)(i), and direct that receiver to "immediately[] take possession of the savings association's books, records, and assets," 12 C.F.R. § 558.1(b)(1), yet on the other hand demand that the deposed directors still comply with regulations that govern the organization over which they no longer have any authority.

There is no other reading consistent with FIRREA. The government repeatedly cites 12 U.S.C. § 1821(d)(2)(A)(i) for the proposition that former officers and employees of the bank had no authority to act after the appointment of the receiver. But that statute not only prohibits the employees and officers from acting – it also bars the directors. So the provision has to be read in a manner that does not eviscerate the judicial review provision contained in section 1464(d)(2)(B).[2]

At the motion hearing on May 20, 2011, OTS protested that the lawsuit was in essence a "rogue" action, since it was brought by officers and employees who, as of the date of the receivership, had been ousted and had no authority to act for the association. OTS argues that "[f]ormer employees who were fired . . . don't have the ability to act on behalf of the association." Tr. at 31. "[T]he officers, shareholders, anyone else – [are] barred by statute from invoking the authority of the association." *Id*. at 11. *See also id*. at 35 ("[Without written authorization] I'm a rogue attorney or rogue fired officer acting on my own."). Counsel for OTS likened the situation to a group of depositors getting together in a bowling alley and deciding to sue OTS. *Id*. at 9. But this analogy is not apt, and the argument is not persuasive in light of the

---

2    As the Court noted in *Gibralter Sav. v. Ryan*, No. 89-3207, 1990 WL 484155, at * 7 (D.D.C. July 10, 1990): "As a final point, it is worth noting that if the Court were to construe the statute to preclude entirely a judicial challenge, as the Director urges, this might well lead to constitutional problems. The Supreme Court has repeatedly held that, in order to comport with fifth amendment due process, an individual must be afforded 'some kind of hearing' before being permanently deprived of a property interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972)); *see also Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299 (1981); *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). Clearly, if this Court were to adopt the Director's argument and dismiss this complaint on the ground that the relevant law so requires, plaintiff would be deprived of its property without any opportunity for a hearing. It is an established tenet that 'an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available.' *Nat'l Labor Relations Bd. v. Catholic Bishop of Chicago,* 440 U.S. 490, 500 (1979) (construing *Murray v. The Charming Betsy,* 2 Cranch 64, 118 (1804))."

unique situation presented by a receivership; that is, everyone, including the directors, has been fired, and everyone, including the directors, has been barred by statute from acting on behalf of the association. Yet the "association" is still permitted, under FIRREA, to bring a lawsuit. In enacting the judicial review provision, Congress clearly intended that someone – and necessarily, someone who has otherwise been deposed – would take that step on the association's behalf.

This conclusion is borne out by *First Savings & Loan Ass'n v. First Federal Savings & Loan Ass'n of Hawaii*, 547 F. Supp. 988 (D. Haw. 1982) ("*First Savings II*"). In that case, the district court in Hawaii dismissed the plaintiffs' anti-trust and other claims for damages and equitable relief: "By virtue of its appointment as receiver, the [receiver] acquired all of the powers of the members, directors and officers of First Savings except one . . . to bring an action in the District Court for an order requiring the Board to remove such receiver." *Id.* at 994. The court reiterated:

> The specific language of both the statutes and regulations clearly establish that upon the appointment of . . . the receiver . . . the members, officers, and directors of that association, save and except with the one exception that I mentioned, lost all power to institute or prosecute or maintain any legal claim or proceedings whatsoever on behalf of the association. The exception heretofore mentioned by the Court is that the association may within 30 days bring an action . . . for an order requiring the Board to remove the receiver.

*Id.* Thus, there is language in the case cited by the D.C. Circuit – and relied upon by OTS – that indicates that it is the "members, officers, and directors" who had the power to institute actions "on behalf of" the association, and even after receivership, retained the power to bring the one type of action that is before this Court: an action to remove the receiver brought "on behalf of" the association.

Thus, this Court will deny OTS's motion to dismiss the claims brought by, or on behalf of, United Western Bank.

12

### B. The Claims Brought by the Holding Corporation and Individual Directors

OTS also argues that the limited waiver of sovereign immunity in section 1464(d)(2)(B) allows only the association placed into conservatorship or receivership to challenge the appointment. Thus, according to OTS, the holding corporation and individual directors lack standing and are not proper plaintiffs in this action. The Court agrees.

It is clear from the plain language of the statute that Congress only authorized the association to bring suit. Section 1464(d)(2)(B) states:

> In the event of [the appointment of a receiver], *the association* may, within 30 days thereafter bring an action in . . . the United States District Court for the District of Columbia[] for an order requiring the Director [of OTS] to remove such . . . receiver."

12 U.S.C. § 1464(d)(2)(B) (emphasis added). Because the statute expressly references only "the association" and no other parties, it is reasonable to conclude that Congress intended to limit judicial review to an action brought by the association.

Although few courts – and none in this Circuit – have directly addressed this issue, the Court is persuaded by the analysis set forth by the Court of Appeals for the Tenth Circuit in a similar case, *Franklin Savings Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466 (10th Cir. 1994) ("*Franklin II*"). There, the court upheld the district court's determination that the holding company could not challenge the appointment of a receiver or conservator based on the "clear statutory language" that the holding company lacked standing. *Id.* at 1469. The court reasoned that the "[h]olding [c]ompany is not the association; it is merely a stockholder." *Id*. *See also Life Bancshares, Inc. v. Fietcher*, 847 F. Supp. 434, 441 (M.D. La. 1993) (dismissing an action brought by officers, directors, and principal shareholders of a bank association – but not the association itself – concluding "section 1464(d)(2)(B) only confers standing upon the association"). The same conclusion is warranted here.

Plaintiffs point to a number of cases where courts in this district have resolved section 1464(d)(2)(B) suits on the merits where individual directors, in addition to the association, were plaintiffs. *See* Pls.' Mem. in Opp. to OTS's Mot. to Dismiss at 8−10. But none of these cases squarely address the question now before the Court. For example, in *Lincoln Savings & Loan Ass'n v. Wall*, 743 F. Supp. 901, 902 (D.D.C. 1990), the court resolved a suit against OTS and FHLBB brought by both a holding corporation and its wholly owned subsidiary savings and loan association. In its decision on the merits, the court made no mention of the holding corporation's lack of standing that OTS alleges here. In *Haralson v. Federal Home Loan Bank Board*, 721 F. Supp. 1344 (D.D.C. 1989), the court resolved a case on the merits brought both by a savings and loan institution and its principal shareholder against FHLBB to remove a receiver but did not address the standing of the shareholder.

In addition, plaintiffs cite a number of cases outside this district in which suits challenging a receivership appointment with multiple plaintiffs have proceeded to the merits. *See, e.g.*, *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1404 (5th Cir. 1987) (reaching the merits in a suit to remove a receiver brought by a principal owner, parent corporation, and vice president in addition to the bank association); *Biscayne Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 720 F.2d 1499, 1500 (11th Cir. 1983) (challenging a receivership appointment brought by a bank association and its majority shareholder); *Mariettta Franklin Securities Co. v. Muldoon*, No. 93-3432, 1994 WL 399550 (6th Cir. Aug. 1, 1994) (resolving a motion for relief from judgment in an appeal brought by both the association and its owner when the court previously refused to consider an appeal pursued by the owner without the association).

But these cases do not prove plaintiff's point. At most, they represent instances where defendants have failed to raise a standing challenge, and courts have failed to act *sua sponte* to

14

dismiss the extra parties. The cases do not overcome the clear statutory language, decisions that have directly resolved this issue on the contrary, and the well-established principles of sovereign immunity. Therefore, the Court will grant OTS's motion to dismiss the holding corporation and individual directors as plaintiffs for lack of standing.

### C. The Claims Against FDIC

Defendant FDIC, in both its corporate and receivership capacities, asserts that it is not a proper defendant in this action and argues that the claims against it should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Returning once again to the plain language of section 1464(d)(2)(B), the FDIC asserts that the statute is expressly limited to actions against OTS. Def. FDIC's Mot. to Dismiss ("FDIC Mem.") at 9. The statute provides:

> In the event of [OTS's appointment of the FDIC as receiver], the association may[] . . . bring an action . . . for an order requiring *the Director* [of OTS] to remove such . . . receiver . . . and the court shall upon the merits [either] dismiss such action or direct *the Director* [of OTS] to remove such . . . receiver.

12 U.S.C. § 1464(d)(2)(B) (emphasis added). According to plaintiff, the statute is silent or ambiguous as to whether any agency other than OTS is a proper defendant. Pls.'s Mem. in Opp. to FDIC's Mot. to Dismiss ("Pls.' FDIC Opp.") at 7–8.

Under these circumstances, the FDIC's reading of the statute is the proper one. The statute expressly authorizes only one party to be sued: the Director of OTS. 12 U.S.C. § 1464(d)(2)(B). Because any waiver of sovereign immunity must be explicit, *see Mitchell*, 445 U.S. at 538, it makes sense that Congress would create a statutory scheme where the agency responsible for the appointment of the receiver would also be the proper defendant in a challenge to that appointment. As the FDIC points out, this is precisely the approach that Congress has

15

used in other related contexts. FDIC Mem. at 11. For example, the statute that authorizes the FDIC to "appoint itself as sole conservator or receiver of any insured State depository institution" also provides that a party may challenge the appointment by bringing suit against the FDIC. 12 U.S.C. §§ 1821(c)(4), 1821(c)(7).

Plaintiffs suggest that because OTS relied on the FDIC's brokered deposit determination in deciding to appoint a conservator and receiver for United Western, FDIC is somehow transformed into a proper defendant. Pls.' FDIC Opp. at 11–14. This argument does not alter the plain language of the statute or the Court's analysis. Section 1464(d)(2)(b) does not authorize suits against agencies on whose conclusions OTS relies in the decision to appoint a receiver.[3]

Finally, courts outside this district have also concluded that section 1464(d)(2)(B) only authorizes suits against the appointing agency. For example, in *First Savings & Loan Ass'n v. First Federal Savings & Loan Ass'n*, 531 F. Supp. 251, 253–54 (D. Haw. 1981) ("*First Savings I*"), the court denied the plaintiff's request for an order to restore its assets, reasoning that such an order was beyond the court's powers. "Section 1464 does not authorize a court to remove a receiver except by issuing an order to the [appointer]. Because the [appointer] is not a party to this action, this court cannot remove the [receiver]." *Id.* at 253.

Plaintiffs attempt to distinguish *First Savings I* by arguing that here, the appointer is named in addition to the receiver. Pls.' FDIC Opp. at 9. But the inclusion of a proper party does not solve the sovereign immunity issue with respect to the other.

---

3   Moreover, the court in *First Savings II* held that the plaintiffs' claims for money damages against the receiver for conspiring to place the association into receivership were barred by the Federal Tort Claims Act, specifically 28 U.S.C. § 2680(a) and (h). *First Savings & Loan Association*, 547 F. Supp. at 997.

Similarly, in *Franklin Savings Ass'n v. Office of Thrift Supervision*, 740 F. Supp. 1531, 1535 (D. Kan. 1990) ("*Franklin I*"), the plaintiff sued both the appointing agency and a state official that had participated in the receivership determination. The court dismissed the state official, even though he had played a role in the appointing decision, because the official had "no power or authority to grant the relief plaintiffs seek." *Id.* Plaintiffs counter that *Franklin I* is distinguishable because the state official could not have reclaimed the plaintiff's transferred assets. Pls.' FDIC Opp. at 10–11. This argument is also unpersuasive. As the court reasoned in *First Savings I*, asking the receiver to reclaim plaintiff's assets is beyond the Court's authority acting pursuant to section 1464(d)(2)(B). Thus, the Court rejects plaintiffs' argument that they cannot be afforded relief without FDIC as a defendant in this lawsuit.

Finally, *Franklin I* debunks plaintiffs' assertion that a jurisdictional discovery order is necessary to determine what role, if any, FDIC played in OTS's decision to appoint a receiver. The request for jurisdictional discovery presupposes that any agency that played a role in OTS's determination should ultimately be joined to the suit. But the statute does not provide for joining parties that played a role; section 1464(d)(2)(B) authorizes suit only against the appointing agency. Thus, the Court will dismiss the claims against FDIC in both its corporate and receivership capacities. In sum, this case is moving forward, as the statute contemplates, with one plaintiff – the bank association, and one defendant – the director of OTS.

## CONCLUSION

For the foregoing reasons, and in reliance upon the motions, the oppositions, and the entire record of this case, the Court grants defendant OTS's motion to dismiss United Western Bank, Inc. and the individual directors, the Court denies OTS's motion to dismiss United Western, and the Court grants defendant FDIC's motion to dismiss. A separate order will issue.

/s/ Amy B Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: June 24, 2011