Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 4

$16.3 million line of credit from JPMorgan Chase.[2] *See* **Exhibits 36, 65, 67, and 92**. UWBK does not have the financial capability to reimburse the Institution for an approximately $10 million income tax receivable owed to the Institution. *See* **Exhibit 52**.

UWBK has been working for an extended period to raise capital with its investment banker, Goldman Sachs. *See* **Exhibit 64**. On October 28, 2010, UWBK entered into an investment agreement with certain potential investors (Investment Agreement). *See* **Exhibit 31**. Following the completion of the contemplated investment, and assuming that all conditions in the Investment Agreement were satisfied, UWBK would infuse $102.6 million into the Institution. However, as discussed later in this memorandum, the Investment Agreement contains multiple unacceptable conditions and unwarranted assumptions, including assumptions that OTS will approve the Institution's business plan, approve the Institution's operating subsidiary application to hold Legent Clearing LLC as an operating subsidiary, and eliminate growth restrictions to which the Institution is presently subject.

The Institution's capital condition has steadily deteriorated. The ongoing comprehensive examination that began on September 27, 2010, determined the need to recognize an additional $16.3 million in impairment charges on non-agency MBS. *See* **Exhibit 44**. On December 3, 2010, the OTS issued a directive letter requiring the Institution to restate its September TFR. *See* **Exhibit 80**. The Institution filed an amended TFR on December 8, 2010, causing it to become PCA "undercapitalized" as of that date. *See* **Exhibit 30**. The OTS issued a PCA notice to the Institution on December 13, 2010 that required submission of a capital restoration plan by December 20, 2010. *See* **Exhibit 46**. The OTS denied the Institution's capital restoration plan on January 18, 2011. *See* **Exhibit 96**.

The decline in the Institution's capital position has now led to a liquidity crisis at the Institution. Nearly 70 percent of the Institution's deposits are institutional deposits placed by one of four institutional depositors. *See* **Exhibit 72**. Pursuant to the Institution's contractual agreements with these depositors, the depositors may terminate these deposit contracts and remove deposits from the Institution after providing a short notice. Recent communications from several of these depositors suggest that, in the immediate future, the Institution is likely to experience substantial deposit withdrawals in excess of its liquidity capacity. The Institution's overreliance on a small number of institutional deposits as a funding source represents a continuing threat to the Institution's viability, is an unsafe and unsound practice, and leaves the Institution in an unsafe and unsound condition.

C.  **Current Condition**

1.  **Capital**

Capital is deficient in light of the Institution's high risk profile, the deterioration in asset quality, the impact of OTTI charges on the non-agency MBS portfolio, the deterioration in earnings, and the requirements of the Institution Order. Moreover, as of December 8, 2010, the Institution is PCA "undercapitalized," as that term is defined in 12 C.F.R. § 565.4(b)(3), with a Tier 1 (Core) capital

---

[2] UWBK and JPMorgan Chase have entered into a series of forbearance agreements in connection with UWBK's continuing default under the JPMorgan Chase line of credit. *See* **Exhibits 36 and 92**.

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 5

ratio of 6.20 percent and a total risk-based capital ratio of 7.8 percent.[3] *See* **Exhibit 28**. As highlighted in the following table, the Institution's capital position has deteriorated since 2009.

| Capital Ratios and Trends | 09/30/2010 | 06/30/2010 | 03/31/2010 | 12/31/2009 |
|---|---|---|---|---|
| **FIRREA Capital Ratios** | | | | |
| Core Capital (% Adjusted Tangible Total Assets) | 6.20% | 7.42% | 6.63% | 7.68% |
| Risk Based Capital (% Risk-weighted Total Assets) | 7.80% | 9.02% | 9.18% | 10.07% |
| **FDICIA Capital Ratios** | | | | |
| Total Risk-based | 7.80% | 9.02% | 9.18% | 10.07% |
| Tier 1 (Core) Risk-based | 6.53% | 7.75% | 7.91% | 8.81% |
| Tier 1 (Core) Leverage | 6.20% | 7.42% | 6.63% | 7.68% |
| **Capital ($000s)** | | | | |
| Core Capital | $127,541 | $164,036 | $172,060 | $192,839 |
| Risk-based Capital | $108,073 | $135,039 | $139,764 | $161,669 |

Source: *See* Exhibit 28

The Institution Order required the Institution to meet and maintain a Tier 1 (core) capital ratio of 8 percent and a total risk-based capital ratio of 12 percent by June 30, 2010. *See* **Exhibit 18**. The Institution failed to meet these capital requirements.

a.   **Other-Than-Temporary Impairment and TFR Restatement**

The September 2010 comprehensive examination included a review of the Institution's process for modeling OTTI. On October 25, 2010, the OTS presented Institution management with an Exception Sheet indicating that the Institution's OTTI modeling process was inadequate and stating that the Institution needed to book an additional $15.1 million in OTTI as of June 30, 2010. *See* **Exhibit 44**. The OTS subsequently advised the Institution's management that further OTS review had identified another $1.2 million in OTTI charges as of September 30, 2010, resulting in a total OTTI charge of $16.3 million. *See* **Exhibit 80**.

Management responded to the Exception Sheet on October 26, 2010. *See* **Exhibit 44**. The response disagreed with OTS's findings and argued that the Institution's OTTI methodology was consistent with GAAP and with industry practice. The response asked for further discussions with OTS and with the FDIC. On November 17, 2010, OTS and FDIC staff met with Institution management to discuss the OTTI charge. On November 24, 2010, the Institution sent a letter to the OTS and FDIC warning that "an adverse determination with respect to" OTS review of the OTTI charge would

---

[3] On December 20, 2010, the Institution notified the OTS that, due to a previously unreported dividend to the Holding Company of approximately $10 million, the Institution's Tier 1 (Core) capital ratio and total risk-based capital ratio as of September 30, 2010, were 5.74 percent and 7.13 percent, respectively. *See* **Exhibits 52 and 61**. The Institution did not file an amended September 30, 2010 TFR for this matter.

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 6

"preclude the FDIC from taking appropriate steps to avoid a liquidity event," citing the FDIC's brokered deposits determinations. *See* **Exhibit 41**.

After reviewing the Institution's responses, the OTS determined that the Institution's methodology did not conform to regulatory reporting requirements and that the Institution was required to record an additional OTTI charge. *See* **Exhibit 44**. On December 3, 2010, the OTS issued a directive letter requiring the Institution to restate its September 30, 2010 TFR by December 6, 2010, to reflect the additional $16.3 million OTTI charge. *See* **Exhibit 80**.

The Institution subsequently filed an amended TFR on December 8, 2010, indicating that the Institution's risk-based capital ratio had fallen to 7.8 percent from the 8.1 percent reported on the September 30, 2010 TFR. *See* **Exhibits 28 and 30**. As a result, the Institution became PCA "undercapitalized" within the meaning of 12 U.S.C. § 1831o(b) and 12 C.F.R. § 565.4(b).

b.   **Capital Raising Efforts and Capital Restoration Plan**

On October 28, 2010, UWBK entered into the Investment Agreement with Oak Hill Capital Partners III, L.P., Oak Hill Capital Management Partners III, L.P. (collectively, Oak Hill), Lovell Minnick Equity Partners III LP, Lovell Minnick Equity Partners III-A LP (collectively, Lovell Minnick), Legent Group, LLC, and Henry C. Duques, an individual who indirectly owns a majority interest in Legent Clearing LLC (Legent Clearing) (collectively, Duques). *See* **Exhibit 31**. Pursuant to the Investment Agreement, Oak Hill, Lovell Minnick, and Duques (collectively, Anchor Investors), would place approximately $100 million of capital into UWBK. The Investment Agreement requires UWBK, prior to closing the contemplated funding transaction, to locate additional secondary investors (Additional Investors) to place an additional $100 million into UWBK. Together with the investment by the Anchor Investors, the projected gross proceeds from the capital raise would be approximately $200 million (Investment).[4] *Id.*

---

[4] As a closing condition of the Investment Agreement, the Holding Company is required to have received gross proceeds from other private placements of securities from Additional Investors that, together with the investment by Anchor Investors, equals an amount not less than $200 million and not more than $205 million. *See* **Exhibit 31**. The Institution has provided the OTS with the names of several additional potential investors. *See* **Exhibits 59, 66, and 90**. However, the OTS has not received any letters of intent or investment agreements with these potential investors.
Previously, the Institution has made representations to the OTS regarding potential investors that have proven to be overly optimistic. In a presentation to the OTS on May 12, 2010, the Institution estimated that it would achieve the Institution Order capital targets, originally contained in the MOU, by June 30, 2010. *See* **Exhibit 64**. On September 16, 2010, the Institution stated that term sheets for the full $200 million capital raise were expected by September 27, 2010. *See* **Exhibit 68**. In a letter to the OTS Acting Director and the FDIC dated November 5, 2010, Institution counsel stated: "The remaining $97 million to $102 million [from Additional Investors] will be raised in a private placement transaction, which [Goldman Sachs] believes can occur within 30 days." *See* **Exhibit 35**. On November 17, 2010, the Institution stated to the OTS that the Institution had "contact and potential meetings" with 53 other investors, with projected completion of remaining private placement by end of November, and closing of the capital raise to occur by December 31, 2010. *See* **Exhibit 69**. In a letter dated December 29, 2010, UWBK stated to the OTS that it expected an additional "firm investment commitment" for $46.8 million from one potential investor, Olympus Partners, within one week; no such firm investment commitment has been received. *See* **Exhibit 59**. In a letter dated January 11, 2011, UWBK stated to the OTS that one potential investor, Auda International Life Partners, had approved an investment in UWBK of between $23.5 million to $25 million; no letter of intent or investment agreement has been received. *See* **Exhibit 90**.

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 7

The Investment Agreement contains numerous conditions that must be satisfied on or prior to closing of the investment transaction, including, among others[5]:

- the OTS's approval of UWB's application to acquire Legent Clearing as an operating subsidiary;

- the OTS's approval of the Institution's modified Business Plan; and

- the OTS's termination of the growth restrictions in the current Institution and Holding Company orders.[6] *See* **Exhibit 31**.

None of these three conditions precedent to consummation of the transaction contemplated by the Investment Agreement will be met:

- On January 18, 2011, the OTS denied the Institution's application to acquire Legent Clearing as an operating subsidiary of the Institution (Legent Clearing Application). *See* **Exhibits 94 and 95**. The OTS denied the Legent Clearing Application due to multiple supervisory concerns regarding the economic merits of the transaction, Legent Clearing's profitability, Legent's recent history of enforcement actions, Legent Clearing's recent loss of its largest customer, and the effect of the proposed acquisition on the Institution's existing concentration of institutional deposits.[7]

- On January 18, 2011, the OTS denied the proposed Revised Business Plan submitted by the Institution as part of its capital restoration plan. *See* **Exhibits 96 and 98**. The proposed Revised Business Plan did not address the Institution's concentration in

---

[5] Other conditions include: (i) the OTS's approval of five proposed employment contracts for officers of UWBK and UWB; (ii) the OTS's non-objection to two proposed directors on each of UWBK's and UWB's boards representing the Anchor Investors; (iii) the OTS's notification to the Institution that it would be deemed "well-capitalized" as defined at 12 C.F.R. Part 565 on a pro forma basis after completing the investments; (iv) JPMorgan Chase Bank, N.A.'s execution of an agreement with UWBK to accept a discounted payoff amount equal to $10,562,500 plus interest on outstanding debt owed by UWBK; (v) the Institution's having at least $1.5 billion in deposits on the closing date; and (vi) the aggregate market value of the Institution's investment securities portfolio exceeding a given target amount as calculated by a specified consulting firm. *See* **Exhibit 31**.

[6] On November 29, 2010, UWB submitted a letter (November 29 Letter) to the OTS and the FDIC indicating that some, but not all, of the closing conditions in the Investment Agreement were negotiable, and outlined specific proposed changes to the Investment Agreement. The November 29 Letter suggested that seven items were "must haves" including, *inter alia*, the approval of the business plan (implicitly releasing the Institution from growth restrictions); approval of the operating subsidiary application; and deletion of the "meet and maintain" language from the Institution Order. *See* **Exhibit 42**. The November 29 Letter did not indicate whether any of the Anchor Investors had agreed to any of the proposed changes. The November 29 Letter reiterated certain requirements for OTS actions and approvals for closing the transaction.

[7] The Institution's operating subsidiary filings were made concurrently with OTS and the FDIC pursuant to 12 U.S.C. § 1828(m) and 12 C.F.R. §§ 352.15 and 559.11. *See* **Exhibit 94**. To date, the FDIC has not taken action to approve the Legent application filed by the Institution. *Id.* In addition, Legent filed an application with FINRA on August 6, 2010, for approval of the sale of Legent to the Institution; any decision rendered by FINRA has not yet been provided to the OTS. *Id.*

27

> institutional deposits, did not provide for adequate liquidity or proper regard for funds management, and called for an excessive level of asset growth in light of the Institution's troubled condition, high level of existing problem assets, and history of poor earnings. *Id.*

- Due to the Institution's significant problems, OTS is not willing to remove the Institution's growth restrictions. *See* **Exhibits 96 and 97**.

On December 13, 2010, the OTS confirmed to the Institution that it was undercapitalized and required the Institution to file a capital restoration plan (CRP) no later than December 20, 2010.[8] *See* **Exhibit 46**. The OTS required the CRP to demonstrate compliance with adequately capitalized standards and ongoing compliance with such capital standards for four consecutive quarters. *Id.* On December 20, 2010, the Institution submitted a CRP. *See* **Exhibit 51**. It incorporated the executed Investment Agreement and projected an infusion of approximately $102.6 million in new capital into the Institution. The CRP projected that this increase in capital would follow the consummation of the Investment Agreement. *Id.*

The CRP submitted by the Institution contained multiple unsupported and unrealistic assumptions. Among these assumptions were that, prior to or contemporaneous with the closing of the proposed investment transaction: (1) the Institution would be able to secure $100 million in funding from Additional Investors; (2) the OTS would agree to remove the growth restriction in Paragraph 26 of the Institution Order; (3) the OTS would approve the Institution's business plan;[9] and (4) the OTS would approve the Institution's operating subsidiary application to acquire Legent Clearing.[10] *See* **Exhibits 96, 97, and 99**. The OTS denied the Institution's CRP on January 18, 2011. *See* **Exhibit 96**.

Other than the Investment Agreement, the Institution has not entered into or provided any letters of intent or other investment agreements with potential investors. Therefore, the Institution will not be able to raise sufficient additional capital in the near term to become PCA "adequately capitalized" or to otherwise address the issues discussed in this memorandum. *See* **Exhibit 97**.

---

[8] The OTS shortened the Institution's time to file a CRP due to the Institution's unsafe and unsound condition. 12 C.F.R. § 565.7(c). *See* **Exhibit 46**.

[9] The proposed Revised Business Plan did not address the Institution's concentration in institutional deposits, did not provide for adequate liquidity or proper regard for funds management, and called for an excessive level of asset growth in light of the Institution's troubled condition, high level of existing problem assets, and history of poor earnings. *See* **Exhibits 96, 98 and 99**. Thus the closing condition requiring OTS approval of the proposed Revised Business Plan will not be satisfied.

[10] The OTS found numerous other deficiencies in the CRP submitted by the Institution, as detailed in the Denial of Capital Restoration Plan letter the OTS issued to the Institution on January 18, 2011. *See* **Exhibits 96, 97, and 99**. Among other deficiencies, the Holding Company failed to submit an acceptable performance guarantee, preventing the OTS from accepting the Institution's CRP. 12 U.S.C. § 1831o(e)(2)(C)(ii). UWBK submitted an executed guarantee document (CRP Guarantee). However, the CRP Guarantee did not conform to the PCA Standard Form of Guarantees and Assurances that the OTS expects holding companies to execute (OTS Standard Guarantee), a copy of which was included as "Attachment C" in the December 13 Notice. *See* **Exhibit 46**. UWBK made significant unacceptable modifications to the OTS Standard Guarantee. *See* **Exhibits 96, 97, and 99**. In addition, the CRP appreciably increased the concentration risk by increasing exposure to institutional depositors (12 U.S.C. § 1831o(e)(2)(C)(i)(III)). *Id.*

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 9

2. **Asset Quality**

| Asset Quality Ratios and Trends | Qtr Ended 9/30/2010 | Qtr Ended 9/30/2009 | Qtr Ended 9/30/2008[11] |
|---|---|---|---|
| Total Adversely Classified Assets/ | | | |
| Tier 1 Capital (Core) Plus ALLL | 206.56% | 55.61% | 14.46% |
| Total Adversely Classified Assets/Total Assets | 16.98% | 5.51% | 1.13% |
| PD (90+) + Nonaccr Loans & Leases/Total Loans & Leases | 5.58% | 3.10% | 1.44% |
| PD(90+)+NonAcc + Reposs/Tier 1 Capital (Core) Plus ALLL | 58.87% | 23.97% | 16.49% |
| ALLL + Gen Allowance/Classified | 11.79% | 20.38% | 58.88% |
| ALLL (000s) | $40,426 | $28,506 | $14,065 |
| **Classified Assets (000s)** | | | |
| Substandard | $342,508 | $139,715 | $23,666 |
| Doubtful | $5,733 | $3,411 | $1,414 |
| Unreserved Loss | $0 | $0 | $0 |
| **Total** | **$348,241** | **$143,126** | **$25,080** |
| **Non-Performing Assets (000s)** | | | |
| Loans Past Due 90+ days (accruing) | $9,694 | $7,328 | $8,275 |
| Nonaccrual Loans | $62,169 | $38,655 | $13,217 |
| Repossessed Assets | $27,025 | $15,561 | $6,979 |
| **Total Non-Performing Assets** | **$98,888** | **$61,544** | **$28,471** |

Source: 5-Qtr UTPRs for 9/30/2010 and 9/30/2009--*See* **Exhibits 28 and 91**.

Asset quality is deficient and has continued to deteriorate. In excerpts from the Board Package for the UWB Board Meeting of January 5, 2011, Institution management reported that classified loans and REO increased from $49.3 million as of December 31, 2008 to $192.8 million as of September 30, 2010. *See* **Exhibit 70**. Management reported that classified loans and REO as a percentage of Tier 1 (core) capital plus ALLL increased from 26 percent as of December 31, 2008 to 111 percent as of September 30, 2010. *Id.*

Management further reported that as a percentage of Tier 1(core) capital plus ALLL, total classified assets, including MBS, increased from 84.35 percent on September 30, 2008 to 200.2 percent on September 30, 2010. *Id.* Total classified assets, including below investment grade non-agency MBS, were $348.2 million on September 30, 2010. *Id.*

The Institution's poor asset quality has had a severe negative effect. Problem loans have required large loss provisions and a loss of interest income. Declining security values have resulted in significant OTTI charges and steep losses from security sales. Poor asset quality contributes to the unsafe and unsound condition of the Institution.

---

[11] Prior to 2009, the Institution's TFR did not identify OTTI as a separate line item under classified assets.

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 10

3. **Earnings**

| Earnings Trends ($000s) | 3 mos Sept-10 | 3 mos June-10 | 3 mos Mar-10 | 12 mos Dec-09 | 12 mos Dec-08 |
|---|---|---|---|---|---|
| Net Interest Income | $16.507 | 16.999 | 16.312 | $72,315 | $85,157 |
| G&A Expense | $16.164 | $18.468 | $18.286 | 62.491 | 53.619 |
| Core Income (NII+Fees-G&A) | $930 | -$915 | -$1,523 | $11,795 | $34,018 |
| Noninterest Income (incl.OTTI) | -$17,257 | -$4,318 | -$5,458 | -$63,284 | $2,483 |
| Provisions for Loss | $19,346 | $5,120 | $14,545 | $38,104 | $13,985 |
| Net Income (Loss) | -$36,658 | -$11,145 | -$21,016 | -$69,359 | 13,685 |
| Net Interest Margin | 3.22% | 2.81% | 2.31% | 2.95% | 3.94% |
| G&A Expense Ratio | 3.15% | 3.05% | 2.59% | 2.55% | 2.48% |
| Efficiency Ratio | 94.01% | 104.58% | 108.43% | 83.64% | 60.95% |

Source: *See* **Exhibits 28-29**.

After net income of $13.7 million in calendar 2008, net losses were $69.4 million in calendar 2009 and $68.9 million through the first nine months of 2010. The loss for 2010 includes the additional OTTI charges that the Institution recognized when it re-filed its TFR for September 30, 2010 in accordance with OTS's directive. *See* **Exhibit 44**.

Several factors caused the deterioration in earnings in 2009. Core income before loss provisions declined from $34.0 million in 2008 to $11.8 million. That decline resulted from a significant decrease in net interest margin and income and from a large increase in G&A expenses. *See* **Exhibit 29**. Higher charges on loans and securities were more significant than the decline in core income. The provision for losses climbed from $14 million in 2008 to $38.1 million in 2009. *Id.* Compared with $4.1 million in 2008, OTTI was $21.0 million in 2009. *See* **Exhibits 29 and 81**. Additionally, the Institution recorded a pre-tax loss of $46.9 million on the sale of below-investment-grade non-agency MBS in 2009. *See* **Exhibit 82**.

Net losses have continued in 2010. Although there was $930,000 in positive core earnings in the third quarter of the year, the Institution had a year-to-date core loss of $1.5 million through September 30, 2010. *See* **Exhibit 28**. Through that date, the Institution had $38.7 million in loan loss provisions. OTTI charges were $27.8 million. *Id.* Without a sufficient capital infusion that would allow the restructuring of the balance sheet and the disposition of problem loans and securities, there is little prospect for earnings to become positive in the immediate future.

4. **Liquidity**

The Institution's decline to PCA "undercapitalized" has created an unacceptable risk that the Institution's institutional depositors will withdraw their funds in the near future. As a result, the Institution is likely to be unable to pay its obligations or meet its depositors' demands in the normal course of business.

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 11

a. **Major Institutional Depositors**

The Institution has an unsafe and unsound concentration in institutional deposits. The Institution's deposits have been concentrated in a small number of institutional depositors for several years. In several examinations prior to 2009, OTS did not object to the concentration. However, beginning in early 2009, the OTS identified multiple concerns with the Institution's deposit concentration due to changes in the economy and institution performance. The recent financial crisis, the Institution's asset quality problems and attendant losses, and the risk that most of these institutional depositors may withdraw their deposits on relatively short notice, has led OTS to conclude that the Institution's concentration of deposits presents unacceptable risks.

The OTS March 30, 2009 Report of Examination (2009 ROE) identified liquidity risks associated with the Institution's concentration in institutional deposits and required adoption of a revised concentration policy, a revised liquidity policy, and a revised liquidity contingency plan.[12] The 2010 Limited ROE identified continuing deficiencies in the liquidity contingency plan and downgraded the Institution's Liquidity component rating to "4," based in part upon the Institution's continuing concentration in institutional deposits. *See* **Exhibit 8**. In a letter dated April 1, 2010, the OTS stressed the importance of liquidity risk management to the Institution and directed the Institution to expand its Liquidity Policy to "include potential contingencies that will become applicable to the [Institution] should it become less than well-capitalized...." *See* **Exhibit 15**. In a letter dated June 22, 2010, the OTS further downgraded the Institution's Liquidity component rating to "5," citing certain immediate risks associated with these institutional deposit relationships. *See* **Exhibit 17**. As a result of its continuing concern with this concentration and the potential for a severe liquidity crisis at the Institution, in a letter dated July 15, 2010, the OTS directed the Institution to immediately notify the OTS in connection with modifications or withdrawals from institutional depositors. *See* **Exhibit 23**.

As of January 13, 2011, four institutional entities (Equity Trust Company (ETC), Lincoln Trust Company (LTC), Matrix Settlement and Clearance Services (MSCS), and Legent Clearing) (collectively, Major Institutional Depositors) accounted for $1.1 billion in deposits at the Institution. That amount represents approximately 67 percent of the Institution's total deposits. *See* **Exhibit 71**.

A Major Institutional Depositor recently withdrew nearly all of its deposits from the Institution, which represented approximately 10 percent of the Institution's total deposits as of mid-December 2010. There is an unacceptable risk that two additional Major Institutional Depositors will remove their deposits from the Institution in the near future. The Institution has insufficient liquidity to handle the withdrawal of these institutional deposits.

---

[12] The 2009 ROE stated: "given the concentration of the majority of its savings deposits in a small number of institutional deposit accounts, the Bank may have inadequate access to funds on reasonable terms to meet unexpected liquidity needs." *See* **Exhibit 3**. The 2009 ROE also stated: "the [Institution's] liquidity contingency plan is inadequate because it does not contemplate specific adverse liquidity events that may require the Bank to gain access to extraordinary levels of liquidity. Further, revisions are needed to the bank's liquidity policy covering funding concentrations and internal reporting procedures." *Id*. The 2009 ROE required the Institution's Board to adopt a revised comprehensive concentration policy that would "set limits for the bank's funding sources, including exposures to institutional depositors" as well as a revised liquidity contingency plan. *Id*.

31

Appendix

Western Region Receivership Recommendation
United Western Bank, Denver, CO (OTS No. 06679)
January 19, 2011
Page 12

The following chart lists the Major Institutional Depositors and other deposits as of January 13, 2011.

| Deposit Source | Deposits as of 1/13/11 ($000s) | % of Total Deposits |
|---|---|---|
| **Major Institutional Depositors** | | |
| ETC and its related companies | 696,870 | 44% |
| MSCS | 14,406 | 1% |
| LTC | 136,311 | 9% |
| Legent Clearing | 225,682 | 14% |
| **Total Major Institutional Depositors** | 1,073,269 | 68% |
| United Western Trust Company (UW Trust), an affiliate of the Institution | 15,011 | 1% |
| Trust Management, Inc. (TMI) | 10,071 | 1% |
| Rounding Adj. | -- | (-1%) |
| **Total Institutional Deposits** | 1,098,351 | 69% |
| Other Custodial Accounts | 7,903 | 0% |
| Qwickrate/Internet CDs | 267,551 | 17% |
| Traditional Brokered Deposits (incl. CDARS) | 3,961 | 0% |
| Subsidiary & Affiliate Deposits | 14,988 | 1% |
| Other Processing and Trust Deposits | 2,747 | 0% |
| Community Bank Deposits | 205,651 | 13% |
| Rounding Adj | 1 | -- |
| **Total Deposits** | 1,601,153 | 100.00% |

Source: *See* Exhibit 71.

The relationships between the Institution and its institutional depositors are governed by written contractual agreements (as amended to date, Depositor Agreements).[13] *See* **Exhibits 53-54**. Each Major Institutional Depositor poses significant risks resulting from the deposit relationship and the applicable Depositor Agreement.

i.   ETC

The largest of the Major Institutional Depositors, ETC, currently holds $697 million in deposits at the Institution, representing 44 percent of total deposits as of January 13, 2011. *See* **Exhibit 71**. ETC serves as custodian for a large number of self-directed IRAs and employee benefit plans. *See* **Exhibit 72**. Subject to its Depositor Agreement, ETC maintains omnibus accounts at the Institution on behalf of ETC's customers, and sweeps cash into and out of Institution accounts each day for deposit insurance purposes. *Id*. ETC repays the remaining outstanding balance on an approximately $40 million loan from the Institution using subaccounting fees received from the Institution in connection with the deposits. *See* **Exhibit 9**.

---

[13] Each of the Depositor Agreements has been amended several times during the past year. *See* **Exhibits 72-77**. Certain provisions of the Depositor Agreements are ambiguous. As described herein, the OTS has communicated with the Institution to attempt to evaluate the risks associated with the Depositor Agreements.