Borrowings/Borrowing Capacity

The table below shows the bank's total outstanding borrowings and funds availability from each source:

| Borrowing Source | As of 12/31/09 (000s) | Availability (000s) |
|---|---|---|
| FHLB-Topeka Borrowings | 180,000 | 222,818 |
| FHLB Dallas Borrowings | 607 | 10,276 |
| Fed Discount Window | 0 | 22,855 |
| **Total FHLB and Fed Borrowings** | 180,607 | 225,949 |
| JP Morgan Chase Securities Repo | 50,000 | 50,000 |
| Citigroup Securities Repo | 25,000 | 25,000 |
| **Total Other Borrowings** | 75,000 | 75,000 |
| **Total Borrowings** | 255,607 | 330,949 |

As shown above, UWB has several borrowing lines with availability remaining. However, experience shows that FHLB and Federal Reserve lines become restricted when the financial condition of an institution becomes distressed. In addition, if the FDIC determines that the bank's institutional deposits are brokered and a rapid shrinkage of these deposits is mandated, a liquidity crisis will result. In this scenario, back-up lines will be moot.

The bank's other borrowings are from securities sold under agreements to repurchase. The table below shows the maturity and call dates for each outstanding repo:

| Other Borrowings – Repos | Amount (000s) | Maturity Date | Call Date |
|---|---|---|---|
| JP Morgan Chase | 25,000 | 9/2/11 | 3/28/10 |
| JP Morgan Chase | 25,000 | 11/21/11 | 2/21/10 |
| Citigroup | 25,000 | 2/21/12 | 2/21/10 |
| **Total Repos** | 75,000 | | |

We recommend a downgrade in the Liquidity component from a "3" to a "4" because of the significant remaining concentration in institutional deposits and the uncertainty as to whether the FDIC will deem the largest institutional deposit relationship with ETC as brokered deposits. If so, the resulting impact could threaten the viability of the Bank.

11

## SENSITIVITY: 3

Results from OTS modeling continue to indicate a low level of interest rate risk at UWB as of September 30, 2009. As a result, no additional review was performed in this area during the field visit. However, we recommend that this component rating be downgraded from a "2" to a "3" due to ongoing market risk within the bank's MBS portfolio and its potential negative impact on earnings (additional OTTI) and capital (from risk weighting of securities) going forward.

United Western Bancorp, Inc (UWBI)

Although we did not review the activities of UWBI during the field visit, OTS notified UWBI (in a letter dated March 4, 2010) that it was designated "in troubled condition'" as the term is defined at 12 C.F.R. 563.555, and subject to various operating restrictions. This designation was based on the above field visit findings related to UWB, the largest subsidiary of UWBI.



**Office of Thrift Supervision**

Department of the Treasury  *Western Region*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7000 • Fax: (650) 746-7001

April 28, 2010

Board of Directors
United Western Bank
700 17th Street, Suite 100
Denver, CO 80202-3501

Dear Directors:

The Office of Thrift Supervision (OTS) commenced an onsite field visit of United Western Bank ("the Bank") on January 11, 2010. As a result of the findings from the field visit, the OTS has downgraded the Bank's composite CAMELS rating from a "3" to a "4" and designated the Bank in "troubled condition" as that term is defined at 12 C.F.R. 563.555. The notification of the downgrade and concurrent "troubled condition" designation was previously provided to you in separate correspondence dated March 4, 2010, and included an enumeration of the various operating restrictions the Bank is immediately subject to related to its "troubled condition." The component ratings for Capital, Asset Quality, Management, Earnings, Liquidity, and Sensitivity have also been downgraded. Capital, Asset Quality and Liquidity have been downgraded from a "3" to a "4." Management and Earnings have been downgraded from a "2" to a "4." Sensitivity has been downgraded from a "2" to a "3."

The liquidity risk at UWB has increased and is of heightened concern, which is the basis for the component downgrade. The Bank's significant concentration in institutional deposits and the uncertainty as to whether the FDIC will deem the largest institutional deposit relationship (with Equity Trust Company) as brokered deposits poses a threat to the viability of the Bank if capital levels fall below "Well Capitalized," or if the Bank is deemed "Adequately Capitalized" due to a formal enforcement action. Given this fact, we believe the Board should consider all strategic alternatives available, including the possible sale, merger, or self-liquidation of United Western, to prevent the potential failure of the institution due to insufficient liquidity.

Capital has been downgraded given current risks to capital posed by the bank's worsening asset quality trends, the potential impact of future OTTI from the bank's remaining relatively large portfolio of below investment grade MBS, and deteriorating earnings. Revised OTTI calculations performed by the Bank during the field visit resulted in the recording of $18.1 million in additional

13

OTTI for year-end 2009, which decreased core and risk based capital (RBC) to 7.68 percent and 10.07 percent, respectively. Although these ratios exceed "Well Capitalized" FDICIA standards, OTS has implicitly stated in the Memorandum of Understanding (MOU) between the Bank and OTS (effective December 10, 2009), that both year-end 2009 core capital and risk-based capital (RBC) levels are deficient. We are concerned that the Bank may not be able to meet and maintain core capital and RBC levels at 8 percent and 12 percent, respectively, by June 30, 2010.

Asset Quality has been downgraded because of increasing problem asset trends (and the need for large loan loss provisioning), which is having a negative impact on earnings and capital formation. Also, risks posed by the bank's non-agency MBS portfolio remain significant. Classified assets (CA) have increased to 148.7 percent of core capital plus allowances for loan and lease losses (ALLL). This includes $210.2 million in noninvestment grade securities OTS has required the Bank to classify "Substandard." Minus these securities, CA totals still remain high at $158.7 million or 64 percent of core capital plus ALLL and 6.3 percent of total assets. Our review also determined that internal processes for monitoring the bank's MBS portfolio for impairment were inadequate. The following corrective actions must be implemented:

- For monitoring purposes, management still needs to rank order the entire portfolio and modify the criteria for obtaining credit valuations to broaden the universe of bonds tested to ensure that all bonds with any potential credit impairment are analyzed.
- Management needs to adopt clear, coherent and consistent written procedures that outline these practices.
- For modeling and credit impairment analysis, the Bank must refine the model used to more accurately reflect current market and specific bond conditions. Going forward any factors deemed unrealistic or unduly harsh by management must be addressed in the underlying assumption inputs into the model used rather than disregarding selective portions of the model output.
- The process and model must be revised and vetted for the bank's first quarter 2010 internal review.

Earnings have been downgraded due to material operating losses recorded for the recent three quarters ended December 31, 2009. Lack of earnings is due to significant reductions in core income caused by a shrinking NIM, high loan loss provisioning in recent quarters to address worsening asset quality (to bring the Bank's level of ALLL to a level that is appropriate for the risk in the Bank's loan portfolio), and material losses recorded on the sale of high risk non-agency MBS. Management needs to update the bank's business plan to reflect changes in business strategies planned for 2010 and the impact of regulatory restrictions that have been imposed on the Bank.

The downgrade in Management is due to the Bank's overall financial condition, which is considered unsatisfactory due to the Bank's increased risk profile and deteriorating earnings performance. In particular, the quality of the community bank real estate portfolio has worsened, the non-agency MBS portfolio continues to pose the possibility of additional OTTI charges, and earnings

14

performance for the most recent three-quarter period ended December 31, 2009, has been poor. As noted previously, we also found management's review of securities for impairment to be inadequate. Further, there is uncertainty regarding the impact that recent changes in senior management, and those that are in process, will have on the Bank.

The Sensitivity component rating was downgraded due to ongoing market risk within the bank's MBS portfolio and its potential negative impact on earnings (additional OTTI) and capital (risk weighting of securities).

We met with management on February 11, 2010, to discuss our findings. Although component ratings were not provided, we advised management that the Bank's composite rating would be downgraded to a "4" (primarily due to Asset Quality and Earnings concerns) and that a formal enforcement action would be required that will result in the UWB being deemed as "Adequately Capitalized."

This notification of composite and component ratings of the Bank is subject to the same prohibitions on disclosure and release as OTS reports of examination. The examination ratings are furnished to the Bank for its confidential use. OTS examination ratings may not be disclosed to the public or to any person not officially connected with the Bank as an officer, director, employee, or attorney under any circumstances by the institution or any of its directors, officers, or employees. Independent auditors officially connected with the institution may be provided the ratings if they agree in writing not to disclose them to any other person not officially connected with the institution as an officer, director, employee, attorney, or auditor.

If you have any questions, please contact me at (650) 746-7025 or Field Manager Kevin Swanson at (650) 746-7066.

Sincerely,


/s/Nicholas J. Dyer
Assistant Director


cc: Tom Trujillo, FDIC-Dallas



**Office of Thrift Supervision**
Department of the Treasury

*Regional Director, Western Region*

225 East John Carpenter Freeway, Suite 500, Irving, TX 75062-2326 • Telephone: (972) 277-9500
P.O. Box 619027, Dallas/Fort Worth, TX 75261-9027 • Fax: (972) 277-9501

March 4, 2010

OTS Docket No. 06679

Board of Directors
Attn: Mr. Scot T. Wetzel, Chairman
United Western Bank
700 17th Street, Suite 100
Denver, CO 80202

**VIA FED-EX**

Re: Troubled Condition Designation

Dear Members of the Board:

On January 11, 2010, the Office of Thrift Supervision (OTS) commenced a field visit of United Western Bank, Denver, Colorado (Association). Although not yet completed, the field visit has found a significant increase in classified assets and deteriorating earnings at the Association.

Based upon information reported in the December 31, 2009 Thrift Financial Report (TFR), the Association is reporting classified assets of one hundred forty-eight percent (148%) of capital plus Allowance for Loan and Lease Losses (ALLL). There were also significant losses reported during the fourth quarter, which will be substantially increased when the Association revises its calculation of other than temporary impairment on its mortgage-backed securities portfolio. This, in turn, will likely have a significant impact on the Association's capital ratios. As a result of the findings to date of the field visit, the OTS has downgraded the Association's composite CAMELS rating from "3" to "4." The Association will be advised of the component CAMELS ratings at the conclusion of the field visit.

The definition of a composite rating of "4" is as follows:

> *Financial institutions in this group generally exhibit unsafe and unsound practices or conditions. There are serious financial or managerial deficiencies that result in unsatisfactory performance. The problems range from severe to critically deficient. The weaknesses and problems are not being satisfactorily addressed or resolved by the board of directors and management. Financial institutions in this group generally are not capable of withstanding business fluctuations. There may be significant noncompliance with laws and regulations. Risk management practices are generally unacceptable relative to the institution's size, complexity, and risk profile. Close supervisory attention is*

Board of Directors
United Western Bank
Page 2
March 4, 2010

> *required, which means, in most cases, formal enforcement action is necessary to address the problems. Institutions in this group pose a risk to the deposit insurance fund. Failure is a distinct possibility if the problems and weaknesses are not satisfactorily addressed and resolved.*

Based upon the Association's composite rating and other information gained from the OTS's ongoing supervision of the Association, the Association is "in troubled condition" as that term is defined at 12 C.F.R. § 563.555.

**Restrictions Related to Troubled Condition**

In view of the troubled condition of the Association, the Association is subject to the following restrictions:

1. Growth Restriction. Effective immediately, the Association shall not increase its total assets during any quarter in excess of an amount equal to net interest credited on deposit liabilities during the prior quarter without the prior written notice of non-objection of the Regional Director.

2. Directorate and Management Changes. Effective immediately, the Association shall comply with the prior notification requirements for changes in directors and Senior Executive Officers[1] set forth in 12 C.F.R. Part 563, Subpart H.

3. Severance and Indemnification Payments. Effective immediately, the Association shall not make any golden parachute payment[2] or prohibited indemnification payment[3] unless, with respect to each such payment, the Association has complied with the requirements of 12 C.F.R. Part 359 and, as to indemnification payments, 12 C.F.R. § 545.121.

4. Employment Contracts and Compensation Arrangements. Effective immediately, the Association shall not enter into, renew, extend, or revise any contractual arrangement relating to compensation or benefits for any Senior Executive Officer or director of the Association, unless it first provides the OTS with not less than thirty (30) days prior written notice of the proposed transaction. The notice to the OTS shall include a copy of the proposed employment contract or compensation arrangement or a detailed, written description of the compensation arrangement to be offered to such officer or director, including all benefits and perquisites. The Board shall ensure that any contract, agreement or arrangement submitted to the OTS fully complies with the

---

[1] The term "Senior Executive Officer" is defined at 12 C.F.R. § 563.555.
[2] The term "golden parachute payment" is defined at 12 C.F.R. § 359.1(f).
[3] The term "prohibited indemnification payment" is defined at 12 C.F.R. § 359.1(l).

276

Board of Directors
United Western Bank
Page 3
March 4, 2010

      requirements of 12 C.F.R. Part 359, 12 C.F.R. §§ 563.39 and 563.161(b), and 12 C.F.R. Part 570 – Appendix A.

5. <u>Third-Party Contracts.</u> Effective immediately, the Association shall not enter into any arrangement or contract with a third party service provider that is significant to the overall operation or financial condition of the Association or outside the Association's normal course of business unless, with respect to each such contract, Association has: (a) provided the OTS with a minimum of thirty (30) days prior written notice of such arrangement or contract; (b) determined that the arrangement or contract complies with the standards and guidelines set forth in Thrift Bulletin 82a (TB 82a); and (c) received written notice of non-objection from the Regional Director.

6. <u>Capital Distributions.</u> Effective immediately, the Association shall not declare or pay dividends or make any other capital distributions, as that term is defined in 12 C.F.R. § 563.141, without receiving the prior written approval of the Regional Director. The Association's written request for written approval should be submitted to the Regional Director at least thirty (30) days prior to the anticipated date of the proposed declaration, dividend payment or distribution of capital.

7. <u>Transaction with Affiliates Restrictions.</u> Effective immediately, the Association shall not engage in any transaction with an affiliate unless, with respect to each such transaction, the Association has complied with the notice requirements set forth in 12 C.F.R. § 563.41(c)(4), which shall include the information set forth in 12 C.F.R. § 563.41(c)(3). The Board shall ensure that any transaction with an affiliate for which notice is submitted pursuant to this Paragraph, complies with the requirements of 12 C.F.R. § 563.41 and Regulation W, 12 C.F.R. Part 223.

8. <u>Applications and Notices.</u> The Association will not qualify for expedited treatment for applications and notices filed with the OTS. See 12 C.F.R. § 516.5.

The restrictions and requirements set forth above are effective immediately upon receipt of this letter and shall remain in effect until terminated, modified, or suspended by the Regional Director. The OTS reserves all of its rights. Nothing in this letter shall be construed as: (1) restricting the OTS in any way from taking such actions (enforcement or otherwise) as it determines are appropriate and authorized; or (2) allowing the Association to violate any law, rule, regulation, or policy statement to which it is subject. The OTS will take formal enforcement action to address our regulatory concerns regarding the Association.

In addition to the foregoing restrictions generally applicable to savings associations in troubled condition, based upon review of the overall condition of the Association, the OTS hereby directs that the Association shall not make any bonus payment to, or otherwise increase compensation of, any of its directors or officers unless it first: (1) provides a thirty (30)-day advance written

Board of Directors
United Western Bank
Page 4
March 4, 2010

notice of such proposed increase, including all documentation required to evaluate the proposal; and (2) receives a written notice of non-objection to the proposal from the OTS.

If you have questions, please contact Assistant Director Nicholas J. Dyer at (650) 746-7025 or Field Manager Kevin Swanson at (650) 746-7066.

Sincerely,

*Edwin C. Chow for*

C.K. Lee
Regional Director

cc: Mr. Thomas J. Dujenski, Regional Director, FDIC-Dallas

Board of Directors
United Western Bank
Page 5
March 4, 2010

epdf:  E. Chow
       C. Coon
       I. Corral-Chavez
       A. Dayao (Daly City Records)
       N. Dyer
       S. Harris (RADS)
       J. Hendriksen
       C.K. Lee
       W. Santos
       Y. Sosa
       K. Swanson
       M. Sweeney (Enf Binder)
       K. Walter



**Office of Thrift Supervision**
Department of the Treasury

*Regional Director, Western Region*

225 East John Carpenter Freeway, Suite 500, Irving, TX 75062-2326 • Telephone: (972) 277-9500
P.O. Box 619027, Dallas/Fort Worth, TX 75261-9027 • Fax: (972) 277-9501

March 4, 2010

OTS Docket No. 06679

Board of Directors  **VIA FED-EX**
Attn: Mr. Scot T. Wetzel, Chairman
United Western Bank
700 17th Street, Suite 100
Denver, CO 80202

Dear Members of the Board:

Based upon a review of the financial condition of United Western Bank, the Office of Thrift Supervision (OTS) is concerned with the savings association's usage of brokered deposits, as defined in 12 C.F.R. § 337.6.

Accordingly, effective immediately, OTS hereby directs the savings association not to rollover or renew existing brokered deposits, or accept new brokered deposits without prior written non-objection of the Regional Director. A request for such non-objection should be submitted to the Regional Director at least thirty (30) days prior to the anticipated date of rollover, renewal, or acceptance of such brokered deposits.

If you have questions, please contact Assistant Director Nicholas J. Dyer at (650) 746-7025 or Field Manager Kevin Swanson at (650) 746-7066.

Sincerely,

*[signature]* for

C.K. Lee
Regional Director

cc: Mr. Thomas J. Dujenski, Regional Director, FDIC-Dallas



**Office of Thrift Supervision**
Department of the Treasury

*Regional Director, Western Region*

225 East John Carpenter Freeway, Suite 500, Irving, TX 75062-2326 • Telephone: (972) 277-9500
P.O. Box 619027, Dallas/Fort Worth, TX 75261-9027 • Fax: (972) 277-9501

March 4, 2010

OTS Docket No. H2192

Board of Directors
Attn: Mr. Guy A. Gibson, Chairman
United Western Bancorp, Inc.
700 17th Street, Suite 2100
Denver, CO 80202

*VIA FED-EX*

Re: Troubled Condition Designation

Dear Members of the Board:

An ongoing field visit conducted of United Western Bank, Denver, Colorado (Association), found a significant increase in classified assets and deteriorating earnings leading the OTS to downgrade the composite CAMELS rating to a "4" and to conclude that the Association was "in troubled condition" as that term is defined at 12 C.F.R.§563.555. Based upon these findings related to the Association, the largest subsidiary of United Western Bancorp, Inc. (Holding Company), and other information gained from our ongoing supervision of the Holding Company, the OTS has determined the Holding Company is "in troubled condition."

## Restrictions Related to Troubled Condition

In view of the troubled condition of the Holding Company, the Holding Company is subject to the following restrictions:

1. Directorate and Management Changes. Effective immediately, the Holding Company shall comply with the prior notification requirements for changes in directors and Senior Executive Officers[1] set forth in 12 C.F.R. Part 563, Subpart H.

2. Severance and Indemnification Payments. Effective immediately, the Holding Company shall not make any golden parachute payment[2] or prohibited indemnification payment[3] unless, with respect to each such payment, the Holding Company has complied with the requirements of 12 C.F.R. Part 359.

---

[1] The term "Senior Executive Officer" is defined at 12 C.F.R.§ 563.555.
[2] The term "golden parachute payment" is defined at 12 C.F.R. § 359.1(f).
[3] The term "prohibited indemnification payment" is defined at 12 C.F.R. § 359.1(1).